John P. GIBBONS, Plaintiff in Error,

v.

Nancy Lee GIBBONS, Defendant in Error.

No. 42649.

Supreme Court of Oklahoma.

May 21, 1968.

Rehearing Denied July 16, 1968.

Jones & Givens, Tulsa, for plaintiff in error.

Blackstock & Joyce, by Roy Hinkle, Tulsa, for defendant in error.

LAVENDER, Justice.

This appeal involves an order, made in a divorce case subsequent to the final decree of divorce, modifying the last preceding order concerning the custody of the minor child of the parties, a boy who was twelve days less than ten years of age at the time of the making of the order in question. The order in question herein, made September 1, 1967, changed full custody of the boy (subject to the other parent's right of visitation) from the father to the mother, and as an incident thereto, required the father to make certain monthly payments to the mother as and for child support. The mother's motion for such an order was based upon a change in her situation since the making of the last preceding custody order.

The father contends, in substance and effect: (a) that the trial court failed to exercise any discretion in the matter because it expressly based its order upon the erroneous theory that, under the decisions of this court, there is no alternative but to award the custody of a child of tender years to the mother in the absence of a clear showing that she is not a fit person to have the custody of the child; and (b) that, to the extent that the trial court exercised any discretion in the matter, it abused its discretion because the evidence adduced at the hearing was not sufficient to sustain the order in question herein.

From a consideration of the record, it is obvious that the trial court's order is based entirely upon that portion of paragraph 2

of 30 O.S.1961, § 11 which says that "if the child be of tender years, it should be given to the mother." The entire section provides that:

"In *awarding* the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question.

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, *other things being equal*, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father." (Emphasis supplied.)

The express authority for a court, in a divorce case, to modify or change its prior order concerning the custody of minor children of the marriage involved, including orders made, as herein, subsequent to the final decree of divorce, is contained in 12 O.S.1961, § 1277, which provides that:

"A petition or a cross-petition for a divorce, legal separation, or annulment must state whether or not the parties have minor children of the marriage. If there are such children, the court shall make provision for guardianship, custody, support and education of the minor children, and may modify or change any order in this respect, *whenever circumstances render such change proper* either before or after final judgment in the action." (Emphasis supplied.)

When the modification or change would change the custody of the minor from one parent to the other parent, there are some well-established, basic rules for determining whether or not the circumstances render the change in custody proper.

In Jones v. Jones (1956), Okl., 294 P.2d 304, 306, 59 A.L.R.2d 651, it is said:

"* * * This court has always adhered to the rule quoted in the case of Jackson v. Jackson, 200 Okl. 333, 193 P.2d 561, 562, to the effect that:

"'"* * * A decree fixing the custody of a child is, however, final on the conditions then existing and should not be changed afterward unless on altered conditions since the decree or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child."'"

In Young v. Young (1963), Okl., 383 P.2d 211, this court held in the second paragraph of its syllabus:

"In a proceeding to modify provisions of an order relating to custody of child, burden of proof is upon applicant to show a substantial change in conditions since entry of order sought to be modified which bear directly upon welfare and best interest of child or show that material facts bearing upon welfare and best interest of child were unknown to court at time order sought to be modified was entered."

In the case of Ness v. Ness (1960), Okl., 357 P.2d 973, 975, this court said:

"The provisions for care and custody of minor children may not be modified unless it be shown that the circumstances of the parties have changed or unless material facts are disclosed, which were either unknown or could not have been ascertained with reasonable diligence at the time when the last prior determination was made. See Duffy v. King, Okl., 350 P.2d 280 and cases cited therein.

"There exists no rigid formula by which to measure the nature of proof necessary to establish a change in circumstances sufficient to justify a revision of the custody arrangements. The paramount consideration in determining the question is the welfare of the child, and the trial court must be guided by what appears to be for the child's [best] interest. * * *"

In Stanfield v. Stanfield (1960), Okl., 350 P.2d 261, this court held, in the first paragraph of its syllabus:

"Where divorce decree awards custody of minor children to one parent and subsequently other parent applies for modification of such decree to change custody of the children on ground of change of conditions, applicant must show that the change in conditions or circumstances affects the welfare of the children and that a change in custody would result in greater benefit to the children."

In this connection, the court said in the body of the opinion:

"In 27B C.J.S. Divorce § 317(2a), p. 539, it is stated:

" 'There has been no legal definition of the new or changed conditions or circumstances necessary to warrant a change of custody. What constitutes a change in circumstances and conditions must be decided in each case as it arises. In any event, the "changed circumstances" rule is not absolutely ironclad and one to which there can be no possible exception; it is another form of evidence which the court may consider to decide the question of modification of custody orders.

" 'While proof of a change in conditions is a prerequisite to the modification of a custody decree, such proof does not necessarily require a modification. The mere fact that conditions have changed since the divorce of the parents is insufficient in itself to warrant a modification of the custody order. Therefore, it is insufficient to establish some change in circumstances or slight change in conditions; there must be a showing of material, permanent, and substantial change in the circumstances or conditions of the parties, affecting the welfare of the children to a substantial or material extent, the two issues being closely interwined [sic].' "

In upholding the trial court's refusal to change the custody of the minor children from the plaintiff-mother to the defendant-father (although directing that the prior order be modified to give custody to the father during their summer vacation, June 15th to August 15th), this court said in the body of the opinion (page 263):

"In the present case there has been a showing that defendant is now in a position to provide a home for these children in a good environment. However, there has been no showing that such home and environment is better than that provided by plaintiff and that a change would be of greater benefit to the children and their welfare. * * * "

These basic rules are specifically applicable to the modification of orders concerning the custody of minor children of the parties to a divorce action, as contained in the final decree of divorce or in orders made subsequent to the final decree of divorce, so as to change the custody of a minor child of the parties to a divorce action from one parent to the other, as distinguished from "awarding" custody at the time of rendering the final decree of divorce.

For the purposes of this opinion at least, we shall treat the making of a custody order that is based upon material facts that were in existence, but which were not known, at the time a prior custody order was made, as the making of the order that should have been made rather than as a modification of the prior order. That kind of a situation was not, in any way, involved in the present case.

Under these basic rules, the burden of proof is upon the parent asking that custody be changed from the other parent to make it appear: (a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and (b) that, as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered. It follows that, if the burden of

proof be sustained, things are not equal and, therefore, paragraph 2 of 30 O.S.1961, § 11, supra, which is expressly conditioned upon "other things being equal," would have no application; or, if the burden of proof not be sustained, things would be equal, and *for that very reason*, the custody could not be changed from one parent to the other.

Therefore, paragraph 2 of 30 O.S. 1961, § 11 can have no application when, subsequent to the rendition of a final decree of divorce, it is sought to modify the last preceding order concerning the custody of a minor child of the parties to the divorce action by changing its custody from one parent to the other parent.

By this, we do not mean to hold that in cases of this kind the trial court may not consider, along with all other pertinent factors, the age of the child with respect to being "of tender years" or being "of an age to require education and preparation for labor or business," in determining whether or not there has been a change of conditions which results in it appearing that the child would be better off, with respect to his temporal and his mental and moral welfare, if his custody were changed from one parent to the other parent; but we simply hold that, in its specific role as a "tie-breaker" when all other things are equal, paragraph 2 of 30 O.S.1961, § 11 cannot apply, in this kind of case, to compel a change in custody from one parent to the other parent.

To the extent that any prior decision of this court is to the contrary, the same hereby is overruled.

This makes it unnecessary to determine whether the child involved in this case was "of tender years" or was "of an age to require education and preparation for labor or business," as those terms are used in 30 O.S.1961, § 11, supra.

The parties to the present proceeding were divorced on March 30, 1962, by the District Court of Tulsa County, Oklahoma. There was one child of the marriage, a son named Kevin, who was about four and one-half years of age at the time. In the decree of divorce, the mother was awarded his custody and was also awarded, as her separate property, the home of the parties and the furnishings therein. Approximately ninety days later, upon the joint application of the parties, the court on May 29, 1962, made an order changing the boy's custody from his mother to his father. The order involved herein modified that order.

At the hearing on the mother's motion to modify the order of May 29, 1962, she testified that she had joined in the request to change the boy's custody from her to his father because her own mother had been injured in a fall and it was necessary to go to live with her mother to take care of her and the boy's aunt who lived with her and was mentally retarded, but that it was not thought wise to take the boy to live with them because his aunt might harm the boy.

The evidence discloses that, during the five and one-half years preceding the latest hearing that the boy's custody was in the father under the order of May 29, 1962, while the boy's age changed from four and one-half years to practically ten years, the father had been employed in Tulsa, with one oil company in its accounting department, and had resided with the boy in a house in Tulsa; that, during the two school years preceding the hearing, the boy had attended a parochial school in Tulsa; that, on school days, the father took the boy to the home of neighbors, named Rauner, who had four sons of school age, where he waited and caught the school bus with the Rauner boys, and then returned on the school bus with the Rauner boys to their home where he waited until his father picked him up on the way home from the office, a period of from one hour to an hour and a half; that, at other times, when the father could not be with the boy, he was cared for by a baby-sitter. This must have been approximately the situation that was contemplated by the custody order of May 29, 1962, which was entered on the joint application of both parties.

The evidence also discloses that the father took the boy to church every Sunday and participated in sports and scouting and other activities with him; that the boy was healthy, was progressing normally in school, and presented no unusual disciplinary problems.

The relationship between the father and mother had remained friendly and cordial. The mother came to visit with the boy and the boy went to visit with his mother, quite frequently, with no objections from the father. Neither the father nor the mother impugned, in any manner or to any degree, the fitness of the other as a parent or to have the custody of the boy, and the evidence disclosed that neither of them had attempted to influence the boy in his feelings towards the other parent. The trial judge remarked about this situation and stated that he believed that the boy himself was the best exhibit in this respect.

The trial judge had an unrecorded, private conversation with the boy (without asking about his preference, if any, between parents), and stated in the record, "I agree with Mr. Givens [one of the attorneys for the father] that he is a fine young man and the father obviously has done an exceptional job in rearing this young man. * * * I recognized that he had extremely strong ties with his father and he has a great feeling of affection and love for his mother * * *. I was greatly impressed with the boy and I must admit that I am very favorably impressed with the father and I would have absolutely no fear in leaving my son, who is approximately the same age as this boy, with the neighbors out there. I am convinced that the Rauners are very fine people. Their actions show this by reason of the fact that they voluntarily pitched in to help out and obviously it has not been to the detriment of the boy, * * *."

The mother's evidence disclosed that she married a Mr. Arbuckle in March of 1964 (which, we note, was some three and a half years prior to filing her motion to modify the custody order of May 29, 1962); that

her husband has a good paying position as a salesman for a national firm; that they live in a three bedroom home in El Paso, Texas; and that they could, and would, provide the boy with a good home. Basically, this change in the mother's situation, as a result of which the boy could be at home with one of his parents at all times that he was not in school, instead of being at a neighbor's home or in the care of a baby-sitter at such times, as outlined above, is the change in conditions relied upon by the mother.

It is obvious from the record before us that this father completely justified the confidence placed in him by the boy's mother and by the trial court when, at the age of four and a half years, the boy's custody was changed from his mother to his father, even during the period before he entered school, as well as during the period after he entered school; that the boy's situation, while in the custody of his father had not been in the least bit detrimental to his temporal welfare or his mental or moral welfare; and that this boy would be at least as well off, insofar as his temporal welfare and his mental and moral welfare are concerned, in the custody of his father as he would be in the custody of his mother, even in her changed situation. This means that the mother failed to sustain the burden of proof of making it appear that the change in her condition would result in the boy's being substantially better off, in those respects, if his custody were changed from the father to her.

The trial court's order of September 1, 1967, hereby is vacated.

However, it is obvious that it would not be to the best interests of this child to require him to change school systems at this point in the current school year, when it is not absolutely necessary to require him to do so, and that it would be to his best interests to be allowed to remain with his mother until, and including, June 14, 1968, subject to provisions for visitation with, and by, his father the equivalent of those

contained in the trial court's order of September 1, 1967. It is so ordered.

JACKSON, C. J., and WILLIAMS, BLACKBIRD, and HODGES, JJ., concur.

IRWIN, V. C. J., and DAVISON, BERRY, and McINERNEY, JJ., dissent.