Jean **MULLANEY**, Appellee,

v.

Gene **MULLANEY**, Appellant.

No. 46899.

Court of Appeals of Oklahoma, Division No. 2.

July 30, 1974.

Rehearing Denied Oct. 10, 1974.

Released for Publication by Order of Court of Appeals Oct. 31, 1974.

L. Dee Oliphant, Floyd & Oliphant, Norman, for appellee.

William O. Fields, Norman, for appellant.

BACON, Judge.

This appeal challenges the propriety of the trial court's order modifying a decree of divorce changing the custody of three minor children.

The parties to this action were divorced on February 1, 1971, and custody of the three children was placed in their father (appellant). In July of 1971 appellee filed a motion to modify asking custody of the children be changed to her. The trial judge overruled the motion and filed its findings of fact and conclusions of law, which, in effect found appellee's condition had changed but concluded her evidence was insufficient to warrant a modification.[1]

Thereafter in August of 1972 appellee filed another motion to modify which contained essentially the same allegations as her motion filed in July of 1971. Before this motion was heard, appellant filed a "cross-motion" to modify seeking to terminate appellee's visitation rights. In October of 1972 both parties withdrew their motions and custody remained with appellant. Then on June 1, 1973, appellee again filed a motion to modify seeking a custody change. The matter was heard, with appellant not personally appearing but represented by his attorney. At the close of appellee's evidence, appellant demurred, which demurrer was overruled and appellant has elected to stand on his demurrer. We will therefore review appellee's evidence in a light most favorable to her together with all reasonable inferences drawn therefrom which we must do in reviewing a demurrer.

To support her motion, appellee offered testimony that she has remarried and now has a home in which she can keep the children, which she was unable to do for some reason at the time the original decree of divorce was entered. Her evidence was she was not employed and therefore could be with her children in her home during the day. The rest of her evidence consisted of testimony given by her minister that

[1] "The above styled matter coming on for hearing on the 6th day of August, 1971, and thereafter continued, after evidence taken, until the 17th day of September, 1971, at which time the Court overruled Defendant's Demurrer and proceeded with additional evidence.

"The Court enters the following findings:
1. There has been a change in condition of the Plaintiff which makes her better able to care for children at this time.
2. Defendant presently offering such care as necessary and such is adequate to meet the children's needs.
3. No change of conditions shown which affects the original placement nor any evidence that indicated a modification would benefit the minor children.
4. Plaintiff's remarriage in recent weeks considered but no evidence that such would benefit the children. Evidence to the contrary that such marriage could be detrimental to the children.

"From the evidence presented the Court enters the following conclusion of law:
1. The statutory preference of the custody of children of tender years to the female does not apply to a Motion to Modify.
2. That the children's present custody is adequate and that not sufficient evidence was presented that would establish that a modification was to the best interest of such children.
3. Visitation rights should be more clearly defined.

"The Court therefore denies the Motion to Modify and directs the parties to incorporate written conditions defining future visitation rights. The Court further Orders that each party shall be responsible for their own attorney's fees.

s/ J. David Rambo

JUDGE"

both she and her husband attended church regularly. This concluded appellee's evidence. Her evidence in no way shed any light on the conditions under which the children are now living while in the custody of their father. We will therefore assume the conditions under which the children now live are satisfactory because of the prior custody orders favorable to appellant.

In 1968 the Supreme Court of Oklahoma handed down Gibbons v. Gibbons, Okl., 442 P.2d 482 (1968) which is factually very close to the case now before us. In *Gibbons* the father was awarded custody of a young boy and subsequently the mother filed a motion to modify the decree changing custody of the boy (then about 10 years of age) to her. The mother's motion was based upon *a change in her situation* since the making of the last custody order. In granting the custody change to the mother, the trial court based its order upon that portion of 30 O.S.1961 § 11, which says that "if the child be of tender years, it should be given to the mother." [2] The Oklahoma Supreme Court reversed and specifically distinguished the rules of "awarding" custody at the time the original divorce decree is entered from the rules in "changing" custody subsequent to the original decree. The court held § 11 *does not* apply in attempted custody modifications. The court cited Ness v. Ness, Okl., 357 P.2d 973 (1960), and said:

> " 'There exists no rigid formula by which to measure the nature of proof necessary to establish a change in circumstances sufficient to justify a revision of the custody arrangements. The paramount consideration in determining the question is the welfare of the child, and the trial court must be guided by

what appears to be for the child's [best] interest. * * * ' "

The court went on, and quoted from Stanfield v. Stanfield, Okl., 350 P.2d 261 (1960) and said:

> " 'Where divorce decree awards custody of minor children to one parent and subsequently other parent applies for modification of such decree to change custody of the children on ground of change of conditions, *applicant must show that the change in conditions or circumstances affects the welfare of the children and that a change in custody would result in greater benefit to the children.'*

> . . . . . .

> " 'In the present case there has been a showing that defendant is now in a position to provide a home for these children in a good environment. However, *there has been no showing that such home and environment is better than that provided by plaintiff and that a change would be of greater benefit to the children and their welfare. * * * '*

> "These basic rules are specifically applicable to the modification of orders concerning the custody of minor children of the parties to a divorce action, as contained in the final decree of divorce or in orders made subsequent to the final decree of divorce, so as to change the custody of a minor child of the parties to a divorce action from one parent to the other, as distinguished from 'awarding' custody at the time of rendering the final decree of divorce." (emphasis ours)

In *Gibbons* the mother's evidence was exactly the same as appellee's evidence in the present case. That is, her situation had improved since the divorce; she had re-

---

**2.** "In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question.

**2.** As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father." 30 O.S.1971 § 11.

married, had a home and could be with the child during the day. In *Gibbons* the evidence of the mother failed to show the young boy would be as well off insofar as his temporal, mental and moral welfare are concerned with the mother as with the father, even with the mother's improved situation. This, held the court, "means that the mother failed to sustain the burden of proof of making it appear that the change in her condition would result in the boy's being substantially better off, in those respects, if his custody were changed from the father to her." In the present case there *is no evidence* showing there would be an improvement in the children's temporal, mental and moral welfare, if custody were changed from appellant to appellee, even with appellee's changed situation. In other words, the record is totally void of any evidence which shows a change of custody to appellee would be an improvement over that which is presently provided and has been provided for the children by appellant since the original decree of divorce. This means, as in *Gibbons*, appellee failed to sustain the burden of proof of making it appear that the change in her condition would result in the children being substantially better off if custody was changed to her.

■ We therefore find the trial court erred in overruling appellant's demurrer to appellee's evidence, and the case is reversed and remanded to the trial court with directions to sustain appellant's demurrer and enter judgment accordingly. Appellant has been required to defend against three such motions since the February 1971 decree of divorce. Appellant is further awarded attorney fees in the amount of $500 for this appeal.

Reversed and remanded.

BRIGHTMIRE, Presiding Judge (concurring specially).

I agree the trial court erred.

Consistent with the lack of sufficient evidence to warrant a change of custody is a failure of appellee's motion to modify to contain legally sufficient allegations of fact authorizing such change and the absence of any factual finding by the trial court justifying it.

The judge's handwritten "Trial Notes" filed in the case disclose no evidence or fact found which would permit the court to conclude the three girls—now ages 7, 6, and 5—would be better off with appellee than with appellant. The only clue as to the underlying factual premise for the judge's order is this language found in the modifying "Order":

"Thereupon the Court . . . finds

. . .

. . . . . .

2. That Plaintiff has sustained the allegations in her said Motion to Modify and the same should be granted . . . ."

The "said Motion to Modify" is not further identified in the order but presumably refers to the last one filed—on June 1, 1973. Following is the extent of the pertinent facts alleged:

". . . In support of Plaintiff's Motion, she alleges the following:

"1. That Plaintiff was married to Louis Breest on September 7, 1971, in Dallas Texas, and that they currently reside in Oklahoma City, Oklahoma, where Plaintiff's husband is employed by the Pepsi Cola Company.

"2. That Plaintiff and her husband are able to furnish a home for the three minor children.

"3. That at the time of granting of the divorce, Plaintiff was unable to care for the minor children, but is now able to do so."

Then followed a conclusion:

"4. That it is in the best interest of the minor children to have the care and custody of said children vested in the Plaintiff . . . ."

Doubt does not exist that appellee did not allege or prove, nor did the court find that she would be able to provide a better home and environment "than that provided by [appellant] and that a change would be

of greater benefit to the children and their welfare" as required in child custodial modification matters. Gibbons v. Gibbons, Okl., 442 P.2d 482 (1968).

Appellee's testimony that lately when she visits the children every other weekend, "They're pretty happy to see me . . . . [T]hey run to the car . . . jump in . . . and they're so excited. They've got something to tell me . . . hugs and kisses . . . ." is really not surprising, especially if both parents are properly helping the children mentally over the unavoidable disturbance of parental separation. Nor is appellee's further testimony that when she returns the children to their home "they beg me not to take them back, they want to stay with me .. . . . They cry and . . . hold to me," if true, indicative that they would be better off with appellee than with appellant. One encounters about the same natural phenomenon when he decides it is time for a young child to leave an amusement park. Everything else being equal the short and infrequent visits of appellee should lend themselves to more indulgence, attentiveness, pleasantness, and exciting temporary experiences than the day in and day out round-the-clock disciplinary requirements of daily living. This may have been why appellant felt like appellee was "putting them up to it and telling them to cry" and asking her not to do that.

It is the welfare of the children that is at stake. The personal desires of either parent must remain subordinate to that. Custodial change can be traumatic and should be made only with extreme care and for sound reasons. The record here is barren of any legal, moral, or other valid reason for a change.

NEPTUNE, Judge (dissenting).

I dissent. The best interests of the three daughters would be served by modifying the custody order and granting custody to the mother. The trial court judgment should be affirmed. The trial court judge is in a much better position than are we to assess the meaning of the testimony. The evidence as to the reaction of the children when the mother picks them up for their visitation and their reaction when she returns them to the father's custody, I think, is a sufficient basis for the conclusion that the judgment is not clearly against the weight of the evidence, in which case the judgment should· be ·affirmed. Jahn v. Jahn, Okl., 276 P.2d 225 (1954).