1998 OK CIV APP 153

**Richard LYONS, Plaintiff/Appellee,**

v.

**Teresa LYONS, Defendant/Appellant.**

**No. 89969.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Sept. 29, 1998.

M. Todd Konsure, Craig H. Carter, McAlester, Oklahoma, For Defendant/Appellant,

W.R. Burnham, Eufaula, Oklahoma, For Plaintiff/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 When the marriage of Teresa Lyons (Mother) and Richard Lyons (Father) ended in a divorce decree, the parties agreed to a joint custody arrangement for the care of their two minor children which was approved by the trial court. Six months later, Mother moved to terminate joint custody and asked for sole custody with visitation by the other parent, alleging Father could no longer provide a safe environment for the minor children and that he was an unfit parent. Father responded with a motion making the same requests which he later withdrew at the hearing on the merits, clarifying that he was seeking enforcement of their joint custody agreement. During these proceedings, the inquiry was limited to the circumstances occurring after the date of the divorce, July 25, 1996. The trial court entered an order denying Mother's Motion to Modify, but required, *inter alia*, Father to obtain an alcohol evaluation and both parents to attend anger control sessions and divorced parent classes. Mother appeals.

¶ 2 Relying on 43 O.S.1991 § 109(G)(2) and *Dunham v. Dunham*, 1989 OK CIV APP 44, 777 P.2d 403, Mother argues in her first proposition that the trial court erred in failing to terminate the joint custody plan between the parties by: (1) applying an incorrect standard for termination of the joint custody agreement, *i.e.*, that matters predating the decree should have been considered

in determining custody, and (2) failing to find that there was a permanent, substantial and material change in circumstances since the entry of the divorce decree which justifies the termination of joint custody, *i.e.,* the undisputed evidence of the parties' hostility.

¶ 3 We agree with both of her arguments. First, at the beginning of the proceedings, the trial court explicitly stated that, "[w]e're not going back in the Divorce, we are not going behind the Decree. We are going to stay in front of the Decree." The examination of witnesses began after this statement by the trial court. During testimony of the first witness called by Mother, questions about matters prior to entry of the decree were met with objections, and those objections were sustained. The trial court allowed Mother's counsel to make an offer of proof, but no change in its ruling was induced by such offer. Thus, as Mother argues, the matter was treated as a modification and a change of circumstances was being used as a standard.

¶ 4 The matter before the trial court, though technically a modification, should have been treated as an initial determination of custody as required by § 109(G)(2), which states that "[u]pon termination of a joint custody decree, the court shall proceed and issue a modified decree for the care, custody, and control of the child *as if no such joint custody decree had been made."* (Emphasis added.) When a joint custody arrangement is being terminated the trial court must make two determinations. First, the permanent and material change of circumstances test from *Gibbons v. Gibbons,* 1968 OK 77, 442 P.2d 482, must be applied in determining whether to end joint custody and then, once it has been found that a permanent and material change justifies the ending of joint custody, placement of the child with either parent must be based solely on the best interest of the child. *Newell v. Nash,* 1994 OK CIV APP 143, 889 P.2d 345. Thus, all facts bearing upon the parties' fitness as parents and the children's best interest should have been considered. The second part of Mother's argument addresses the first *Gibbons* determination.

¶ 5 Mother testified that Father had moved three times since their divorce and was now living outside the children's school district, that he had never provided her with any of the addresses and that once while he had physical custody, she did not know where the children were for two weeks. She further testified that because he is not interested in her son's extracurricular activities, Father won't let her son participate, causing her to switch days with him. She also testified that most of the time during Father's physical custody the children are not even with him, and that living 11 days with Father and 18 days with her was not providing a stable environment for the children.

¶ 6 Furthermore, the trial court's own statements after the parties' closing arguments support Mother's argument that his decision against terminating joint custody was not in the children's best interest and was against the clear weight of the evidence. In reference to the testimony he heard during the two day hearing, the trial court first stated, "[i]ts the worst I've heard since I started practice in '69." Then, after announcing there had been no substantial change of conditions and the reason for that conclusion, the trial court explained "[t]he Joint Custody Plan contemplates two reasonable parents working together. *Since reasonable parents do not exist I am going to make reasonable parents out of both of you."* (Emphasis added). He thereafter ordered the assessment and counseling previously discussed.

¶ 7 As the Court noted in *Stewart v. Stewart,* 1980 OK 160, ¶ 8, 619 P.2d 606, 607, citing with approval the United States Supreme Court speaking through Mr. Justice Douglas in *People of the State of New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 612, 67 S.Ct. 903, 905 91 L.Ed. 1133 (1947):

"the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, *if such facts were not presented or considered at a former hearing."*
... a custody decree "is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, *or because of material facts bearing on the question of custody and existing at the time of the decree, but*

*which were unknown to the court,* and then only for the welfare of the child." (Emphasis added; citations omitted.)

This record also contains evidence of several matters affecting the best interest of the children which was not considered by the trial court in the recent hearings and which, because of the agreed nature of the divorce and initial custody arrangements, was not previously brought to the attention of the trial court.

¶ 8 The trial court's conclusion that the *Gibbons* test had not been met for terminating the joint custody plan was clearly against the weight of the evidence and must be reversed. Based on that conclusion, all evidence relevant to the best interest of the children, including evidence of acts by the parties which would have been admissible if presented at the time of the divorce, must be considered on remand. The trial court's order is reversed, and the case is remanded for new trial in accordance with this opinion.

REVERSED AND REMANDED FOR NEW TRIAL.

HANSEN, J., and BUETTNER, P.J., concur.