OSCN Found Document:RICHARDS v. RICHARDS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 RICHARDS v. RICHARDS
2017 OK CIV APP 41
Case Number: 114612
Decided: 08/18/2017
Mandate Issued: 09/20/2017
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2017 OK CIV APP 41, __ P.3d __

 

WAYNE A. RICHARDS, Petitioner/Appellee,
v.
RACHAEL M. RICHARDS, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, OKLAHOMA

HONORABLE DAWSON ENGLE, JUDGE

AFFIRMED

Charles M. Laster, Shawnee, Oklahoma, and MaryGaye LeBoeuf, Oklahoma City, Oklahoma, for Appellant,
Marianne Miller, Amanda C. Dockrey, Shawnee, Oklahoma, for Appellee.

Larry Joplin, Judge:

¶1 Mother, Rachael Richards, appeals the trial court's order, filed December 15, 2015, modifying custody, visitation and child support. In the order, the trial court found Mother did not have a good faith basis to relocate with the children and Father, Wayne Richards, met the Gibbons standard so that custody, visitation and child support should be modified making Father the primary custodial parent. Gibbons v. Gibbons, 1968 OK 77, 442 P.2d 482.

¶2 Mother and Father were married in October 2004 and divorced in April 2014. There were two children born during the marriage, H.R., born in 2005, and J.R., born in 2012. Mother was awarded "the exclusive care, custody and control of the minor children[,]" subject to Father's reasonable visitation, including the "Pottawatomie Standard Visitation Schedule" which was attached to the divorce decree.[1] Mother was awarded the marital home in Tecumseh, Oklahoma and was to make the mortgage payments thereafter. Father also continued to reside in the Tecumseh area.

¶3 During the course of the marriage, Mother was the children's primary caregiver, taking the children to the doctor, attending parent-teacher conferences and generally dealing with the children's day to day needs. Father became more involved in the children's day-to-day matters after the divorce.

¶4 After the divorce, Mother was unable to make the mortgage payments on the Tecumseh home and was in imminent danger of foreclosure. As a result, she considered moving from Tecumseh pending the foreclosure. She proposed moving with the children to Hugo, Oklahoma, approximately 138 miles from Tecumseh. On January 28, 2015, Mother filed a notice of relocation in which she gave an address for a rental home in Hugo and said she planned to enroll in a nursing program in Hugo. Father filed an objection on February 4, 2015 and a motion to modify custody on February 20, 2015. Mother moved from Tecumseh on March 15, 2015. When Father contacted Mother to find out where she had gone, she responded by text saying, "to Hugo, like I said in the relo papers." Father filed an amended motion to modify custody on June 5, 2015. Mother filed a response and counter-motion on June 18, 2015. The trial court conducted the hearing on the competing motions to modify on September 29th and October 19th and issued the appealed from order on December 15, 2015.

¶5 Instead of moving to Hugo, as Mother had originally stated in her relocation notice, Mother actually moved to Rattan, Oklahoma, a community a few miles north of Hugo. Mother did not move into the rental home, the address for which she provided in the relocation notice. Instead, Mother moved into the home of her boyfriend's parents in Rattan, Oklahoma.[2] Mother's boyfriend lived in a separate residence on the property near his parents' home. In addition, Mother did not enroll in the nursing program, nor had she been attending classes at the time of the October 2015 hearing at which the court considered the motion to relocate. The nursing classes began only weeks earlier in August 2015. Mother testified it was her desire to eventually enroll in the nursing classes, after she was able to save some money and find a reliable means of transportation. Mother did not provide any updates, changes or amendments to her January 2015 relocation notice as her living arrangements and school plans changed, nor did Mother provide notice she and the children were moving into the home of her boyfriend's parents, instead of into the Hugo rental home address provided in her relocation notice.

¶6 The 2014 divorce decree included relocation provisions outlined in 43 O.S. Supp.2008 §112.3(D), describing notice and hearing requirements in the event either parent moved more than 75 miles from their current residence. The language in the decree included:

A. The relocating party shall mail (or serve in the manner provided for service of summons) a Notice of Intent to Relocate containing the following information in writing to the other party, and any other person entitled to visitation with the child, on the terms set out herein:

1. the intended new address, including the specific address, if known;
2. the new mailing address, if not the same;
3. the home telephone number, if known;
4. the date of the intended move or proposed relocation;
5. a brief statement of the specific reasons for the proposed relocation of the child, if applicable; an[d],
6. a proposal for a revised schedule of visitation with the child, if any.

B. The relocating party shall give notice of the proposed relocation of the child or the proposed change of the party's residence address to the other party on or before the sixtieth (60th) day before the proposed change. If the relocating party did not know and could not have reasonably known of the change in sufficient time to provide a sixty (60) day notice, then such party shall give notice of the change on or before the tenth (10th) day after the date that he or she knows of the change.

C. The obligation of the party to give the notices and to provide the information set out herein shall continue so long as that party is entitled to custody of, or visitation with, a child covered by this order.

...

E. The failure of a party to notify of a relocation of the child may be taken into account in a modification of custody of, visitation with, possession of, or access to, the child. The Court may assess reasonable attorney fees and costs against a party who fails to give the required notice.

¶7 The standard of review for a modification of custody is abuse of discretion. Casey v. Casey, 2002 OK 70, ¶23, 58 P.3d 763, 771. The trial court's decision must be supported by the record. Id.

¶8 Mother's first proposition of error asserts that she made a good faith decision to relocate to Rattan, Oklahoma and the trial court's finding she did not act in good faith marks an abuse of discretion and is unjustified by reason and the evidence. Mother first points out that a parent has a presumptive right to relocate with the children. 43 O.S. Supp.2009 §112.2A. The relocating parent has the burden to prove the relocation is made in good faith. 43 O.S. Supp.2008 §112.3(K). If the relocating parent meets the good faith requirement, "the burden shifts to the nonrelocating person to show that the proposed relocation is not in the best interest of the child." 43 O.S. Supp.2008 §112.3(K). In this case, the court found Mother's move was not made in good faith; if not made in good faith, the burden never effectively shifted to Father under the terms of §112.3(K).

¶9 With respect to the trial court's finding that Mother did not act in good faith when relocating, the record demonstrates Mother failed to meet her continuing obligation to keep the information regarding the proposed relocation current as factors changed, under the requirements of 43 O.S. Supp.2008 §112.3(C)(3). Even if Mother initially filed her relocation notice in good faith, virtually nothing in Mother's notice came to fruition. Mother gave an address for a rental home she never moved into, then did not provide Father with updated information about her move into the home of her boyfriend's parents, which was located in a different town from the one Mother said she was moving to. She did not begin nursing school prior to the hearing and provided no evidence of an existing plan to begin school. At no point in the notice did Mother say she was moving to be near a significant other; although relocation is not precluded due to a parent's desire to move to be nearer to loved ones, the court viewed Mother's complete oversight in mentioning the boyfriend or her living arrangements within close proximity to him as evidence of her lack of good faith. Scocos v. Scocos, 2016 OK 36, ¶11, 369 P.3d 1068, 1072.

¶10 In making its ruling, the trial court was critical of Mother's move to take a minimum wage job, when minimum wage jobs were available in the Tecumseh area and found specious Mother's excuse of the loss of her car as the reason she was unable to attend nursing school in Hugo, when Mother was able to find a ride into Hugo for work and Mother testified her boyfriend and his family also helped her with transportation needs. In making its finding that Mother did not act in good faith in initiating the relocation, the court said the following:

To me, the entire move was predicated upon ["]I want to be near my boyfriend, and I'm going to try to find a reason and throw stuff at the wall until it sticks of (sic) that's the reason I'm moving.["]

So by her doing that, by her moving, having multiple reasons, only moving for a minimum-wage job, there are minimum-wage jobs in this area, she does not start school[,] she adversely impacts the children at that point because then her move decreases the amount of time that the children get to spend with their father.

So I'm going to grant the motion to modify as to custody and award the petitioner custody of the children beginning November 1st with the respondent receiving standard visitation. The motion to modify child support will be granted. That will begin November 1st.

...

So to summarize, the move is a material and substantial change. It's a permanent change. It adversely impacts the children because it decreases the amount of time that the children get to spend with their father because of the distance, and there was not a good-faith basis for that move on the respondent's [Mother's] part.

¶11 We find there was evidence in the record upon which the trial court could base its determination that Mother failed to act in good faith, especially in terms of her continuing obligation to provide information about the proposed relocation as factors changed. 43 O.S. §112.3(C)(3). However, the trial court was still charged with the solemn responsibility to determine whether visitation or custody should be modified based on Mother's relocation. Kaiser, 23 P.3d at 284 n.3.

¶12 "The right of a custodial parent to relocate to a distant new home with his or her child when that move is opposed by the noncustodial parent is governed by two different statutes: [43 O.S. Supp.2009 §112.2A] and 43 O.S. Supp.200[8], § 112.3." Mahmoodjanloo v. Mahmoodjanloo, 2007 OK 32, ¶2, 160 P.3d 951, 952. The trial court also relied on Gibbons v. Gibbons, which provides additional guidance regarding modification of a divorce decree with respect to custody. Gibbons, 1968 OK 77, 442 P.2d 482.

¶13 In examining whether the rights or welfare of the child have been prejudiced as referenced in 43 O.S. §112.2A, the trial court applied Gibbons v. Gibbons, which follows two basic steps. First, the court must determine since the making of the order to be modified, whether there has been a permanent, substantial and material change of condition(s) which directly affects the best interests of the minor child. Second, as a result of such change in condition(s), the minor child would be substantially better off, with respect to the child's temporal, mental and moral welfare, if the requested change in custody be ordered. Id. at 485. "The paramount consideration in determining the question [of custody] is the welfare of the child, and the trial court must be guided by what appears to be for the child's (best) interest." Id. at 484. The Gibbons court quoted the CJS treatise as follows:

[I]t is insufficient to establish some change in circumstances or slight change in conditions; there must be a showing of material, permanent, and substantial change in the circumstances or conditions of the parties, affecting the welfare of the children to a substantial or material extent, the two issues being closely inter[t]wined.

Gibbons, 442 P.2d at 485.

¶14 The appealed from order twice stated the Gibbons standard was met to support Father's motion to modify custody. In the court's ruling from the bench, the court said Mother's relocation "decreases the amount of time that the children get to spend with their father," and based its finding of permanent, material and substantial change in condition on the decreased visitation.

¶15 Mother's move to Rattan made Father's added Sunday overnight and the alternating mid-week visitation logistically difficult during the school year. Although, the Oklahoma Supreme Court has previously spoken to this issue and determined a change in visitation is an insufficient basis upon which to deny the custodial parent's right to relocation and denial of custody, the trial court in this case was presented with additional changes in circumstance which the court was able to consider, including the boyfriend's use of marijuana in the presence of a minor and offering the minor marijuana, as well as evidence of the boyfriend's arrest for assault. Kaiser, 23 P.3d at 286. Father argued these factors were concerning due to the boyfriend's prolonged and close proximity to the children after the move to Rattan. In addition, the provisions of the divorce decree stated "failure of a party to notify of a relocation of the child may be taken into account in a modification of custody", visitation or access to a child. As a result, both parents were notified from the outset that failure to provide proper notice of relocation could adversely impact the terms of their custody and visitation.

¶16 Moving to be close to loved ones or a romantic interest is permissible under Oklahoma law; the Oklahoma Supreme Court has found merely wanting to be closer to loved ones and seeking a fresh start are legitimate reasons to relocate. Kaiser, 23 P.3d at 284 n.3; Scocos v. Scocos, 2016 OK 36, ¶11, 369 P.3d 1068, 1072; Mahmoodjanloo v. Mahmoodjanloo, 2007 OK 32, 160 P.3d 951. However, notice of the terms and factors involved in a parent's relocation need to be provided to the other parent and Mother's attempts to obfuscate where she was going and with whom the children were going to be living did not meet the notice requirements of the court or the statute. 43 O.S. §112.3(D). On the record presented, we do not find the trial court abused its discretion in modifying the original custody order.

¶17 Mother's second proposition of error alleges Father failed to meet the non-custodial parent's burden to warrant a change of custody, because change to Father's visitation is an insufficient reason to order custody to be vested in Father from Mother. As noted previously, due to the court's finding Mother did not act in good faith in relocating with the children, the burden did not effectively shift to Father under 43 O.S. §112.3(K). In addition, the changes to Father's visitation and access to the children were not the only conditions to change when the children moved to Rattan. As a result, we find no relief is warranted on Mother's second proposition of error.

¶18 The order of the trial court is AFFIRMED.

GOREE, P.J., and BELL, J., concur.

FOOTNOTES

[1] In the divorce decree, the standard visitation schedule was attached to the July 18, 2014 decree. However, according to testimony presented at the relocation hearing, Father's visitation during his alternating weekend visitation periods differed from the order and Father would actually begin visitation at 6:00 p.m. Thursday evening until Monday morning; the decree/order lists the alternating weekend visitation as Friday to Sunday visitation. Also not reflected in the 2014 order, Father testified he had mid-week visitation during the alternating weeks when he did not have the weekend visitation.

[2] Mother testified the boyfriend's parents were gone for considerable lengths of time due to the homeowner's work as a traveling nurse. Mother and the children were invited to live at the house for $300/month, less than half the amount of the mortgage on the marital home under foreclosure. The children had their own room, as did Mother and the house was spacious even when the parents were at home. Mother's testimony and exhibits indicated the $300 rental fee was less than she would be able to spend for a comparable rental property.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1968 OK 77, 442 P.2d 482, GIBBONS v. GIBBONS
Discussed at Length
 2002 OK 70, 58 P.3d 763, CASEY v. CASEY
Discussed
 2007 OK 32, 160 P.3d 951, MAHMOODJANLOO v. MAHMOODJANLOO
Discussed at Length
 2016 OK 36, 369 P.3d 1068, SCOCOS v. SCOCOS
Discussed at Length
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 112.3, Relocation Notification of Children
Discussed at Length
 43 O.S. 112.2A, Parent's Right to Change Child's Residence
Discussed at Length