HURLEY v. HURLEY, Adm'x.

No. 30159. June 2, 1942.

Rehearing Denied June 30, 1942.

*127 P. 2d 147.*

Frank D. McSherry, of McAlester, and Leroy G. Cooper, of Shawnee, for plaintiff in error.

Allen D. Dabney, of Eastland, Tex., and Reily & Reily, of Shawnee, for defendant in error.

HURST, J. In this action Verna Hurley, administratrix of the estate of Aaron Quinman Hurley, deceased, sought to recover from J. F. Smith and the Traders & General Insurance Com-

pany for the wrongful death of the deceased. Edmond, Dolores, and E. D. Hurley were joined as being, with Verna Hurley, the next of kin. By stipulation between the parties $6,500 was agreed upon as the amount of all damages sustained by reason of the death of the deceased, and was paid into court, and the trial court, after deducting funeral expenses in the sum of $729 and an attorneys' fee of $355 for the attorney for the administratrix, apportioned the remainder of said sum one-fourth to E. D. Hurley, the father of deceased, and three-fourths to Verna Hurley, the mother. From this judgment, E. D. Hurley, hereinafter called Hurley, appeals, and plaintiff cross-appeals.

The deceased was killed on May 27, 1939, in an accident on an oil lease while employed by J. F. Smith, the owner of the lease, who was the brother of Verna Hurley. Deceased was 24 years of age at the time of his death. For several years prior to his death his mother and Edmond and Dolores Hurley, his brother and sister, had been living with him in a house on the lease. Edmond was 21 years old, and Dolores 18, when deceased was killed. It appears that deceased supported the family to the best of his ability. J. F. Smith advanced money to put Edmond and Dolores through college, and also contributed to some extent to the support of the family.

On December 6, 1937, the father was committed to the State Hospital for the Insane at Vinita, because of a certain mental condition. Up to that time he seems to have provided for the family. Shortly after his commitment Verna Hurley moved to the lease and kept house for, and was supported by, deceased. Hurley escaped from the hospital some time in March, 1939, and went to Louisiana, where he had brothers living. He is a carpenter and cabinet maker by trade, and capable of earning a living, and from the evidence has done so since escaping from the hospital. He testified that his health was poor, and that the deceased had promised to help him if he needed help, and that he relied upon such promise, and

felt sure that deceased would assist him when necessary. On October 23, 1939, Verna Hurley obtained a divorce from Hurley on the ground of abandonment and nonsupport. She filed the present action on January 24, 1940.

Hurley contends that the trial court erred (1) in its findings of facts, conclusions of law, and the judgment rendered; (2) in overruling his motion to strike parts of the petition and in admitting evidence; (3) in holding that the apportionment of the judgment was an equitable matter, and not a jury question; and (4) in not rendering judgment for him on the pleadings, and in overruling his demurrer to the petition and demurrer to the evidence.

1. The first contention presents two questions: (a) Was the deduction of funeral expenses and attorneys' fees before the division between plaintiff and Hurley proper? and (b) should the money have been equally divided between plaintiff and Hurley?

(a) The stipulation under which the $6,500 was paid into court in settlement of the liability of defendants Smith and Traders & General Insurance Company was signed by all the parties to the action. It provided that said sum was in settlement of all damages sustained because of the death of deceased, and that upon payment thereof the defendants Smith and Traders & General Insurance Company should be released from any further liability, "either for pecuniary damages, pain, suffering, hospital, medical, funeral bills, or any damages of any kind or character arising out of the death of Aaron Quinman Hurley, deceased." The trial court, before apportioning the sum so paid between plaintiff and Hurley as the surviving next of kin, deducted the funeral expenses and a fee for plaintiff's attorney.

The deduction of funeral expenses was proper. Under the stipulation of the parties the sum of $6,500 covered the funeral expenses as well as all other damages. The evidence shows that such expenses were advanced by J. F. Smith, the brother of Verna Hurley and em-

ployer of the deceased. He had a valid claim therefor against the estate of deceased. The funeral expenses being included in the amount agreed upon as covering all' damages, the trial court properly deducted them before making the award to the next of kin for pecuniary loss, since the funeral expenses went to the estate of the deceased, and did not inure to the benefit of the next of kin. The trial court found that the bill for funeral expenses was proper and reasonable, and that finding is not against the weight of the evidence.

The attorney's fee was a proper allowance. While the attorney's services were contracted for by plaintiff, they were beneficial to both plaintiff and Hurley, since they resulted in an increase in the amount recovered. The fee included expenses in the sum of $85 incurred by the attorney in negotiating the settlement with the insurance company. We consider the fee a part of the necessary expenses of collection which should be paid out of the fund. 16 Am. Jur. 171; Yelton v. Evansville & I. R. Co., 134 Ind. 414, 33 N. E. 629; Thompson v. Nowlin, 51 W. Va. 346, 41 S. E. 178.

(b)   After Smith and the insurance company paid the $6,500 into court pursuant to the stipulation of the parties, the trial court, on June 3, 1940, entered an order exonerating them from further liability, and reserving for future determination the apportionment of that sum. After hearing the evidence offered by both plaintiff and Hurley, the court divided the sum, after deducting the funeral expenses and attorney's fee, one-fourth to Hurley and three-fourths to plaintiff, concluding that such division was in proportion to the pecuniary loss suffered by each. At the same time the court rendered judgment against Smith and the insurance company for $6,500. Hurley contends that the order of June 3, 1940, was a final judgment as to the liability of Smith and the insurance company, and that under the provisions of 12 O. S. 1941 § 1053, and the decisions of this court in Tackett v. Tackett, 174 Okla. 51, 50 P. 2d 293, and Aetna Cas-

ualty & Surety Co. v. Young, 107 Okla. 151, 231 P. 261, it was the duty of the trial court to apportion the sum equally between him and the plaintiff as the next of kin.

We are committed to the rule that a judgment must determine the rights of all parties to the action and all issues raised by the pleadings. Foreman v. Riley, 88 Okla. 75, 211 P. 495; Wells v. Shriver, 81 Okla. 108, 197 P. 460. In the Tackett and Aetna Cases, relied upon by Hurley, the pleadings upon which the original judgments were rendered did not raise the issue of the apportionment of the recovery between the parties entitled thereto, and the judgments rendered were in all respects final. In the present case the issue of the apportionment of the fund was raised by the pleadings, and the order of June 3, 1940, did not purport to be and was not a final judgment, as it expressly left open and reserved for further consideration and decision the right of the respective next of kin to participate in the fund, and the amount each was entitled to receive.

Hurley asserts that under the holding of the court in Aetna Casualty & Surety Co. v. Young, supra, the money when paid into court became a trust fund for the next of kin, and by reason of the provisions of section 1053 they shared equally therein. We do not agree that the money should be equally divided. This court has repeatedly held that where a case is brought under section 1053 for damages to the next of kin, the jury must base its verdict on the pecuniary loss suffered by the next of kin, as shown by the evidence. Missouri-Kansas-Texas R. Co. v. Canada, 130 Okla. 171, 265 P. 1045, 59 A. L. R. 743; Okmulgee Gas Co. v. Kelly, 105 Okla. 189, 232 P. 428. The principle announced in these cases is sound. The measure of damages is fixed by 23 O. S. 1941 § 61, which provides that "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proxi-

mately caused thereby, whether it could have been anticipated or not." Missouri, K. & T. Ry. Co. v. West, 38 Okla. 581, 134 P. 655. Therefore those who have suffered no detriment are entitled to no compensation. Where several next of kin establish that they have sustained pecuniary loss, the jury, in determining the amount necessary to compensate all, and thus compute the amount of their verdict against the defendant liable therefor, must necessarily consider and determine what loss has been shown to have been suffered by each of the next of kin. Thus the jury is able to and should on request apportion the amount of the verdict among the next of kin who have suffered pecuniary loss. Tackett v. Tackett, supra. In the present case no jury was impaneled, and the apportionment was made by the court.

Section 1053 does not, as contended by Hurley, fix the proportion of the recovery to which each of the next of kin is entitled, but provides the method of ascertaining such proportion and distributing it when ascertained. It provides that the recovery shall be distributed "in the same manner" as personal property of the deceased. The manner of distribution of personal property of a deceased person is set forth in 58 O. S. 1941 § 632, which provides that in the order of decree of distribution "the court must name the persons and the proportions or parts to which each shall be entitled." This statute (section 632) does not fix the proportion to which each of the heirs of a deceased person is entitled. The proportion is fixed by the laws of descent if the deceased died intestate, or by the will if he died testate. Thus, in an action brought under section 1053, for the next of kin, the amount each is entitled to recover is fixed by 23 O. S. 1941 § 61, while the manner or procedure of distribution by the trial court is governed by 58 O. S. 1941 § 632, and the court or jury, as the case may be, must find which of the next of kin have suffered pecuniary loss, and the amount of loss sustained by each, and distribute the award accordingly.

To construe section 1053 as fixing the amount to which each of the next of kin is entitled to be that amount which he would receive under the law of descent would necessitate giving the word "manner" the same meaning as "proportion," and to do so would frequently result in injustice and absurdity, since it would often require a distribution wholly at variance with the pecuniary loss sustained by the respective next of kin.

In re Riccomi's Estate, 185 Cal. 458, 197 P. 97, 14 A. L. R. 509, where the statute was silent upon subject, the court refused to divide the recovery in accordance with the law of descent, stating that such division would be absurd.

In Murphy v. Duluth-Superior Bus Co., 200 Minn. 345, 274 N. W. 515, 112 A. L. R. 27, the court, under a statute providing that the recovery should be distributed among the next of kin "in the same proportion" as personal property of persons dying intestate, held that it must be so divided, saying:

"That the result leads to a great injustice cannot be gainsaid, but this is the only conclusion possible without doing violence to the clear wording of the statute. An amendment to section 9657 to remedy this situation would seem to be most desirable. That is within the province of the Legislature and not the court."

See, also, notes, 14 A. L. R. 516, and 112 A. L. R. 30.

Statutes will be construed, when the language will permit, so as to prevent absurdity or hardship. McGannon v. State ex rel. Trapp, 33 Okla. 145, 124 P. 1063; Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P. 2d 26. To give section 1053 the effect contended for would be contrary to this rule, and would also do violence to the language of the section.

In Duzan v. Myers, 30 Ind. App. 227, 65 N. E. 1046, the court, in a proceeding for the distribution of a lump sum judgment recovered for wrongful death, held, under a statute identical with section 1053, that such distribution "must be made according to the law of descent which governs the distribution of per-

sonal property." The court made no attempt to analyze the statute, and cited no authority in support of the construction given it. We decline to follow this construction of section 1053.

Hurley also urges that the evidence shows that he is entitled to an equal division of the recovery. We think not. The evidence shows that he is 51 or 52 years of age, and that he has wholly abandoned his family. He is capable of earning good wages, although he testified that he had been unable to obtain steady employment, and that his health was not good. The plaintiff is 50 years of age, and has no experience or training in any gainful occupation. Under these conditions the pecuniary loss sustained by the plaintiff, who lived with and was supported by the deceased, was much greater than that sustained by Hurley.

What we have said also disposes of the fourth contention made by Hurley, which involves the same question.

Plaintiff by cross-petition contends that she is entitled to the entire recovery, but in view of the conditions above set out we think the division by the trial court was fair, and will not disturb it.

2. The action of the trial court in overruling the motion to strike that part of plaintiff's petition which asserted the right of Edmond and Dolores Hurley to participate in the recovery for the death of deceased, if error, was harmless error, since the trial court refused to permit them to participate. Hurley urges that the trial court admitted evidence under the allegations sought to be stricken which was prejudicial to him, but from an examination of the record the evidence complained of appears to have been offered for the purpose of showing that he deserted his family and left upon deceased the burden of their support, and that by reason of such conduct he could not reasonably expect pecuniary assistance from deceased.

He also complains of the admission of evidence showing that J. F. Smith contributed to the education of these children, and that he did not offer to repay Smith, but the record shows that the sums advanced by Smith were gratuitous, and were to enable the children to attend college, and that Hurley was financially unable to make or repay such expenditures. Smith testified that he had an understanding with Edmond and Dolores that they would repay him if and when they were able, but that he had no understanding about the matter with Hurley. We do not think Hurley was prejudiced by such evidence.

3. Hurley contends that he was entitled to a jury trial. We do not agree. The fund was a trust fund. Aetna Casualty & Surety Co. v. Young, supra; 17 C. J. 1226, § 69; 25 C. J. S. 1120. The proceeding for the apportionment and distribution of such fund was therefore an equitable proceeding, since the enforcement of trusts and the distribution of trust property, or funds, are matters cognizable in equity. 21 C. J. 116.

Affirmed.

CORN, V.C.J., and RILEY, OSBORN, GIBSON, and DAVISON, JJ., concur. BAYLESS, J., dissents. WELCH, C. J., and ARNOLD, J., absent.