Nancy Gail TAYLOR, Respondent,

v.

Clifford Dean ASPEY, Defendant,

v.

Paul E. TAYLOR, Sr., Appellant.

No. KCD 29029.

Missouri Court of Appeals,
Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer
Denied June 12, 1978.

M. Sperry Hickman, Independence, for appellant.

Charles Gersh, Grandview (Gersh, Holt, Earhart, Jones & Dibler, of counsel), Grandview, for respondent.

G. Michael Fatall, Kansas City, for defendant.

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

For the wrongful death of Paul Eugene Taylor, Jr., as a result of being struck by a car when he was a pedestrian, a settlement was achieved with defendant Aspey's insurer, for the amount of the policy limit, $10,-000.00. Appellant-intervenor, the deceased's natural father, contends here that under § 537.080, RSMo 1969, he was entitled to an equal interest in the judgment from the $10,000.00 fund which was paid into court. As to who may sue for the wrongful death of an unmarried minor, § 537.080(2) provides that suit may be brought " * * * by the father and mother, natural or adoptive, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor; or if the surviving parents are unable or decline or refuse to join in the suit, then either parent may bring and maintain the action in his or her name alone, for the use and benefit of both such parents; * * *." The trial court, after hearing the evidence, apportioned the fund, $9,291.28 to respondent, and $708.72 to appellant, under the provision of § 537.-095, which is: "In any action for damages under section 537.080, the trier of the facts shall state the total damages found or the total settlement approved. The court shall then enter a judgment as to such damages, apportioning them among those persons entitled thereto as determined by the court." As is obvious, the latter statute does not offer any guidelines or factors for apportioning the damages.

Deceased was born in 1959, and was 15 years old at the time of his death. The

parties here were divorced in 1963, and respondent was awarded the custody of deceased, he living with her until the date of the accident. Appellant paid $60.00 per month child support for deceased.

After the accident, which was on August 28, 1975, deceased died 8 days later. The exhibits in evidence show that the Research Hospital bill, doctors' bills and ambulance totalled $6,833.30, and interment, grave marker, casket, limousine and flowers, totalled $2,359.33, a grand total for these expenses of $9,192.63. Of these amounts, about $7,800.00 had been paid by respondent or on her behalf from life insurance policies, her own pocket, or through Union insurance, and about $1,600.00 remained unpaid.

Respondent testified that appellant never offered to pay any of the bills. He was in the Army, earning over $1,200.00 per month with a rank of E8. He had promised to pay respondent's second husband $433.72 for the grave marker, but she has a claim for that amount because it was originally paid out of insurance proceeds belonging to her. The amounts paid by appellant were: $50.00 for funeral flowers; $275.00 paid to respondent three or four months before trial (which was on July 23, 1976) for the grave plot. The court also allowed attorneys' fees of one-third of respondent's recovery, or $3,097.09, and observed, "The only thing that we have here, is a policy which is going to pay $10,000 and that is inadequate to pay the expenses that everybody became obligated for when you consider the amount of attorney fees and legal expenses. So, it's just a question of trying to apportion the actual out-of-pocket expenses * * *."

It has long been the rule in this state and many other jurisdictions that expenses incurred, or which beneficiaries have become obligated to pay, for medical and hospitalization expenses, and funeral expenses, are items which may be recovered as part of the damages in wrongful death cases. *Rains v. The St. Louis, Iron Mountain & Southern Railway Company*, 71 Mo. 164, 169 (1879); *Hickman v. Mo. Pac. Ry.*

*Co.*, 22 Mo.App. 344 (Mo.App.1886); *Hildreth v. Key*, 341 S.W.2d 601, 613–614 (Mo. App.1960). Proceeding from this premise, it is obvious that these parties, natural parents of the deceased, had they been equal, could have recovered what they jointly paid, if they had done so, for the medical, hospital and burial expenses of their deceased son. The facts here are, however, that respondent paid the vast majority of these expenses. If appellant would prevail in his claim that he is entitled, under § 537.080, to one-half the settlement proceeds, it would leave respondent holding the bag for all that she paid out. Such a result would clearly be inequitable. The matter of the equities of the parties was addressed in *Hurley v. Hurley*, 191 Okl. 194, 127 P.2d 147 (1942), as to apportionment of damages, for wrongful death as between deceased's mother and father. The amount agreed upon as wrongful death damages was $6,500, and the court apportioned the damages three-fourths to the mother and one-fourth to the father, after deducting funeral expenses and the mother's attorney fees incurred in bringing the wrongful death action. Two issues were considered: Whether the deduction of funeral expenses and attorney fees before apportionment was proper; and whether the judgment should have been apportioned equally. As to the first issue, the court held that the deduction for funeral expenses, having been advanced by the mother's brother, and going to decedent's estate, not the next of kin, was proper. As to attorneys' fees, that deduction was proper because it was a necessary expense in creating the fund. As to the contention that the judgment had to be apportioned equally, the court found that the trial court had made the apportionment on the basis of the pecuniary loss suffered by each parent, and said, loc. cit. 127 P.2d 150[5, 6], " * * * those who have suffered no detriment are entitled to no compensation." The *Hurley* court held that the proceeding to apportion the judgment was of equitable nature because the party recovering the judgment held it in trust for all persons entitled thereto, and therefore it was in equity because the enforcement of

**672**

trusts and the distribution of trust funds are equitable matters. Compare *Adams v. Coleman*, 386 P.2d 1004 (Okl.1963); and *Tackett v. Tackett*, 174 Okl. 51, 50 P.2d 293 (Okl.1935), where, in each case no issue was raised on apportionment of the judgment based upon pecuniary loss. See also *In re Riccomi's Estate*, 185 Cal. 458, 197 P. 97 (1921), an action to apportion a $3,000 judgment for wrongful death brought by the mother of deceased against his wife, the latter being awarded 15/16ths of the judgment, and the mother claiming on appeal that she was entitled to one-half. The court said, 185 Cal. 462, 197 P. 98[3], "[h]ow perfectly absurd it would appear to be to hold that where the whole amount of the recovery is given solely on account of the pecuniary injury to the surviving wife, one-half thereof must go to a surviving father or mother or brother or sister of decedent who has suffered no pecuniary injury whatever."

If appellant's contention were sustained that he is entitled to one-half the gross settlement proceeds for the wrongful death of the son, it would not only be inequitable and unfair, but it would subvert the obvious purpose of § 537.095 to apportion the damages awarded or the settlement in accordance with the parties actual pecuniary loss, which in different cases may vary in accordance with the facts, as *determined by the court.*

The judgment is affirmed.

All concur.