In the Matter of the ESTATE OF Ryan Lynn LOVELY, Deceased.

Faith FORTUNE, Appellant,

v.

Fred LOVELY, Trustee of the Constructive Wrongful Death Trust of Ryan Lynn Lovely, Deceased, and Fred Lovely, Personal Representative of the Estate of Ryan Lynn Lovely, Deceased, Appellees.

No. 77772.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 12, 1993.

Mickey J. Hadwiger, Hadwiger & Hadwiger, Cherokee, for appellant.

Charles G. Huddleston, Ames, for appellees.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

On November 19, 1989, twenty-nine-year-old Ryan Lynn Lovely (Decedent) was killed in a pedestrian-automobile accident. His parents, Faith Fortune (Fortune) and Fred Lovely (Lovely), who were divorced in August of 1975, sought the division of $25,-000 of wrongful death proceeds as compensation for their grief and loss of companionship pursuant to 12 O.S.1991 § 1053(D).[1] On May 20, 1991, Fortune, Lovely, and one of Decedent's brothers testified at a hearing on the application to determine the distribution of these funds.

The evidence was for the most part uncontroverted. According to the divorce decree, Fortune was awarded custody of the parties' minor children, and Lovely was granted visitation privileges and ordered to pay child support. From the time Decedent was fourteen years old until he reached majority, Lovely paid a total of $200 child support. Lovely exercised visitation with his children only sporadically, and usually each visit was initiated by Fortune. Lovely never sent Decedent cards or gifts, but on occasion did give him money when the son sought a loan. After Decedent reached majority, he moved to Fairview, Oklahoma, where Lovely and Decedent would sometimes visit. Decedent would also on occasion visit his father in Ames, Oklahoma. After the fatal accident, Fortune and Lovely jointly arranged for and attended Decedent's funeral. Each testified they grieved their son's death and missed his companionship.

The trial court concluded the events which occurred "at the time and shortly after the divorce almost sixteen years ago are too remote in time to use as a measure of present grief and loss of companionship by compliance with the divorce decree granted in 1975." The trial court further found there was no evidence Lovely had abandoned Decedent; both parents had "suffered mutual pain and anguish and loss of companionship;" and the wrongful death proceeds should be equally divided between the parents after payment of "proper debts, attorney fees and court costs."

Fortune appeals, claiming she is entitled to a substantially greater share of the settlement proceeds, and argues the trial court abused its discretion when it: (1) awarded Lovely one-half of the wrongful death proceeds; and (2) made a finding there was no evidence that Lovely had abandoned Decedent after the parties' divorce, which if true, she submits would

---

1. Title 12 O.S.1991 § 1053(D) provides:
   Where the recovery is to be distributed according to a person's pecuniary loss or loss of companionship, the judge shall determine the proper division.

prohibit him from sharing in the wrongful death settlement. Fortune further asserts the trial court erred when it concluded her evidence of Lovely's post-divorce neglect was "too remote to consider" after it had admitted such evidence over Lovely's objection stating that it "goes to the weight [of the evidence]."

■ Money paid into court in settlement of an action for wrongful death is in the nature of a trust fund. The proceedings for the apportionment and distribution of such funds are therefore equitable, since the enforcement of trusts and the distribution of trust property or funds are matters in equity. *Hurley v. Hurley,* 191 Okl. 194, 127 P.2d 147 (1942). In matters of equitable cognizance, the appellate court will examine the entire record, weigh the evidence, and will only reverse if the trial court's judgment is clearly against the weight of the evidence or contrary to law. *Rees v. Briscoe,* 315 P.2d 758 (Okla.1957).

■ Having examined this record, we must conclude the trial court's order is not clearly against the weight of the evidence or contrary to law. There is competent evidence that after the parties' divorce Lovely was working part-time and paid very little child support because, according to Lovely, he "[d]idn't have the money." Fortune admitted she never sought enforcement of the child support order through contempt nor did she seek assistance from the district attorney. When Decedent was still a minor, Lovely would occasionally visit with the children on weekends and during the summer where they would all participate in lake activities.[2] While it was undisputed that Fortune spent more time with Decedent, that she had given him employment for a time, and had traveled with him on occasion, the record evidence is equally clear that both parents suffered grief as a result of Decedent's untimely death and experienced a loss of his companionship.

Fortune suggests *Hurley* dictates that we set aside the trial court's equal division. However, two principal factors present in *Hurley* and not present here negate this argument. First, the *Hurley* court affirmed a trial court decision against equal division. As noted previously, the standard of review in these cases is "clearly against the weight of the evidence." Applying that standard in affirming a trial court decision is not the equivalent of mandating that trial court decision as a matter of law. If we apply the equitable standard of review correctly, we must affirm even though the evidence would have allowed a different result, unless we determine the trial court decision is "clearly against the weight of the evidence."

Second, the law applicable to the damages which the trial court was assessing in this case differs greatly from the law in existence when *Hurley* was decided. Unlike the situation here, prior to his death the decedent in *Hurley* was supporting his mother and siblings, and recovery under 12 O.S.1941 § 1053 was restricted to the pecuniary loss suffered by the next of kin as shown by the evidence. *See Missouri K. & T. Ry. v. Canada,* 130 Okl. 171, 265 P. 1045 (1928). The term "pecuniary loss" discriminates between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which it is not possible to set a pecuniary valuation. *Michigan Cent. Ry. v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913). The *Hurley* court affirmed the award of only one-fourth of the wrongful death settlement to the father based on the relative age, earning capacity and employment experience of the decedent's parents, and concluded that the pecuniary loss to the mother was much greater than that of the father.

However, the 1979 amendment to § 1053 authorizes certain categories of recoverable damages for various classes of recognized beneficiaries which were non-existent when

2. Decedent's brother testified:
 We saw [Lovely] quite a bit really, a lot on the weekend, and we went there during the summer sometimes. I would say two or three times a year if you want to count the weekends. I would say we probably spent about three weeks out of the year with him.

*Hurley* was decided. By such amendment, the Legislature added loss of consortium and grief of a surviving spouse and loss of companionship and grief of the children and parents of the decedent. 12 O.S.1991 § 1053(B). The evidence necessary for a prima facie showing of entitlement to a portion of these damages is entirely different than that necessary in a case of pecuniary loss.

■ The extent of a parent's loss on the death of a child under § 1053 is not solely measured by the quality of one's parenting. *Williams v. Cover*, 74 Or.App. 711, 704 P.2d 548 (1985). Our wrongful death statute does not provide that a parent who deserts his child either physically or financially forfeits, as a matter of law, his right to recover appropriate damages for wrongful death. In fact, the *Hurley* court rejected a counterappeal by the mother in that case asking for all of the settlement proceeds.

■ Fortune's further reliance upon the termination of parental rights provision in 10 O.S.1991 § 1130 as somehow providing for termination of parental rights by operation of law is similarly unpersuasive. The fundamental rights of a parent are protected by our federal and state constitutions, and require a full panoply of procedural safeguards, including proper notice, before a parent may be deprived of such right. *Matter of Adoption of Darren Todd H.*, 615 P.2d 287 (Okla.1980). Fortune never instituted proceedings to terminate Lovely's parental rights, and we find no authority in Oklahoma law requiring the trial court to constructively do so in the context of this litigation.

Finally, we find no merit to the argument that the trial court's finding—Fortune's evidence as to the events immediately following the parties' 1975 divorce was too remote on the issue of grief and loss of companionship occasioned by Decedent's death in 1989—amounts to a refusal to consider the evidence. In an action of purely equitable cognizance it is for the trial court to determine the credibility of the witnesses and the weight and value to be given their testimony. *Blagg v. Rutledge*, 207 Okl. 559, 251 P.2d 196 (1952).

The trial court was free to conclude the evidence of Lovely's nonpayment of child support and infrequent visits with Decedent during the latter's minority should be given less weight than evidence of the quality of the father-son relationship during the years immediately preceding Decedent's death when assessing the extent of father's grief and loss of companionship.

Fortune has not demonstrated any error of law by the trial court or that its decision was clearly against the weight of the evidence. Our review of the record reveals no abuse of discretion, and the trial court's order must be affirmed.

AFFIRMED.

GARRETT and JONES, JJ., concur.