2001 OK CIV APP 43

**Tracy Lynn PUETT, Plaintiff/Appellee,**

v.

**Brian MILLER, Defendant/Appellant.**

**No. 93,760.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 16, 2001.

Buckley W. Barlow, Tyler, TX, for Plaintiff/Appellee.

Ronald L. Daniels, Tulsa, OK, for Defendant/Appellant.

---

1. The order was not filed until July 19, 1999.

## OPINION

GARRETT, J:

¶ 1 Appellant, Brian Miller, and Appellee, Tracy Puett, are the natural parents of A.M., their daughter, born October 21, 1992. Appellant and Appellee were never married. A paternity action established Appellant as the father, and a Decree of Paternity was filed on September 17, 1993. Appellee was awarded custody. Appellant was granted visitation and was ordered to pay child support. Appellant later filed a motion to modify custody. He alleged: Appellee failed to provide a stable home environment; she leaves A.M. with family or friends for extended periods of time; her income is not adequate to provide for the needs of A.M.; she has placed A.M. and herself in possible physical danger; and, she is constantly moving, causing Appellant to be unable to have consistent visitation. Appellant has employment, is able to provide a stable home environment, and it would be in the best interests of A.M. to place custody in Appellant. Prior to the court's ruling on Appellant's motion, Appellee made allegations that Appellant had sexually abused A.M.

¶ 2 The court rendered an "interim order" on March 3, 1998,[1] which was to be valid until July 6, 1998. The court found that a permanent, substantial and material change of conditions existed which affected the best interest of the child, and the temporal, moral and mental welfare of A.M. would be better if the current custody arrangement was changed. The court ordered a custody arrangement in which the parties would alternate custody every seven days. The court found Appellee was involved with John Keenan, who had physically abused her in A.M.'s presence. The court also found Appellee had obtained a protective order against Keenan, but that she reconciled with him and dismissed the protective order after he was incarcerated despite his threats against her and A.M. The court also found Appellee had allowed Keenan to care for A.M. after the alleged abuse.

¶ 3 In the order, the parties were ordered, *inter alia*, to complete eight weeks of parenting classes, not to smoke, use drugs or al-

cohol in A.M.'s presence, and not to use derogatory nicknames for A.M. Additionally, Appellee was ordered not to have men over during her periods of custody, to undergo individual therapy for anger management and to deal with problems that arose in her childhood. The court ordered A.M. was to have therapy, "with the cost not covered by insurance divided according to the child support guidelines." The parties were also ordered not to use corporal punishment on A.M. and not to allow others to do so, i.e., the "wife, husband, or significant other". The court found the evidence from Detective Steven Bales, the Oklahoma Department of Human Services and Dr. Leslie Barnes showed there had been no sexual abuse by Appellant.

¶ 4 Judge Clancy Smith, who issued the March 3, 1998 order, later recused herself from the case because Appellant's mother became the judge's employee. A judge from a different county, Judge Charles Humphreys, III, was assigned to the case. On February 25, 1999, the court ruled on the motion to modify. An order, not filed until August 19, 1999, recited the March 3, 1998, "interim order" had been issued by Judge Clancy Smith, who found the standards of *Gibbons v. Gibbons*[2] had been proven by Appellant. The order also recited that Judge Smith granted "joint custody" of A.M. to the parties and divided time with the child evenly. Additionally, the court found the evidence presented showed the joint custody arrangement was not workable, nor in A.M.'s best interest. The court awarded primary physical custody to Appellee.

¶ 5 Appellant filed a motion for new trial, which was denied. For reversal, Appellant contends:

1. The trial court's decision to grant Appellee custody of the child was erroneous, considering that Judge Smith previously granted Appellant's motion to modify custody.

2. The court's decision to grant Appellee custody is not supported by fact.

¶ 6 Appellant first contends the facts relating to custody and the best interests of A.M., as determined in the March 3, 1998 interim order, are conclusive and may not be relitigated. Appellant argues that the court may modify its previous order only if new evidence is presented alleging facts unknown at the time of the previous order, citing *Stewart v. Stewart*, 1980 OK 160, 619 P.2d 606. However, in the instant case, the March 3, 1998 order was specifically termed an "interim order", effective only until July 6, 1998. See also 43 O.S. Supp.1998 § 112(A)(3), Care and Custody of Children, identical to the current statute, 43 O.S. Supp.2000 § 112(A)(3), which provides that the court may modify or change any custody order whenever circumstances make the change proper, either before or after final judgment. The court obviously intended to order joint custody only on a short term basis, followed by a review within approximately 120 days. Included as a finding of fact in the order was that Appellant had not had A.M. in his care for any extended period of time. The court was concerned about Appellant's lack of experience in caring for a child, and obviously had reservations about Appellee as well. The order shows that *at that time,* the court found a material change in circumstances had been shown and that a change in the existing arrangement was necessary, to be followed by a review of the situation at a later date.

¶ 7 Since the entry of the interim order, Appellant obtained a divorce after a brief marriage and returned to live with his parents. He had steady employment and was going to college part-time, one night per week. He testified his father took A.M. to school because he had to be at work at 6:30 a.m. Appellant testified he picked A.M. up after school everyday at 3:30. Appellant tes-

---

**2.** "Under these basic rules, the burden of proof is upon the parent asking that custody be changed from the other parent to make it appear: (a) that, since the making of the order sought to be modified, there has been a permanent, substantial and material change of conditions which directly affect the best interests of the minor child, and (b) that, as a result of such change in conditions, the minor child would be substantially better off, with respect to its temporal and its mental and moral welfare, if the requested change in custody be ordered." *Gibbons v. Gibbons*, 1968 OK 77, 442 P.2d 482, 485.

tified that he sometimes used corporal punishment, i.e., spanking with a paddle, but it was only one swat with mild force as is appropriate for a six-year old. He also restricted her privileges as a form of punishment. He testified he believed Appellee also used corporal punishment.

¶ 8 Appellee had remained in the same employment since the entry of the interim order, and was purchasing a residence, formerly owned by her grandmother, on a contract for deed arrangement. She testified she no longer lived with her allegedly abusive boyfriend. She stated that during her week of custody, she spent time only with her daughter and did not see her adult friends, although her brother and his friends would sometimes come to her home. She testified she took her daughter to school each morning and picked her up after she got off work. She denied using corporal punishment on her daughter, although she stated Appellant uses it. Appellee stated A.M.'s teacher told her that A.M. had problems with the joint custody living arrangements.

¶ 9 A change in custody will not be disturbed on appeal unless it is so clearly against the weight of the evidence as to constitute an abuse of discretion. *Coget v. Coget*, 1998 OK CIV APP 164, 966 P.2d 816, citing *David v. David*, 1969 OK 164, 460 P.2d 116. Both parties testified they had performed every requirement ordered by the court in the interim order.[3] Testimony conflicted as to A.M.'s preferences as to the living arrangement. Appellee said A.M. did not like the joint custody living arrangement, but Dr. Barnes, a licensed psychologist who testified about her observations of A.M. and both parents, testified A.M. said she thought it was working out just fine. She did say A.M. would like to see her mother a little more. Appellee testified A.M. stated she wished she could see her father more instead of spending so much time with her grandparents, Appellant's parents.

¶ 10 Dr. Barnes testified she thought it would be in A.M.'s best interests if Appellant received sole custody. She said he is a nurturing parent and interacts very appropriately with A.M. as a parent. She also testified she is concerned about Appellee's ability to control A.M. when she observed her playing aggressively. She said A.M. was argumentative and did not obey Appellee when Appellee told A.M. to stop sticking out her tongue. In contrast, A.M. had been very compliant when she was there with Appellant. Dr. Barnes stated she had many concerns about Appellee's adequacy in parenting, although she testified in February, 1999, that she had not seen Appellee and A.M. interact since January, 1997.

¶ 11 The trial court made the finding in the order on appeal that the joint custody arrangement is not a workable one. While we agree with that finding, the evidence presented did not establish the *Gibbons* requirement that the temporal, moral and mental welfare of A.M. would be better if custody is awarded to Appellee. Dr. Barnes testified she did not see a negative impact on A.M. by the fact Appellant lives with his parents. Appellant's previous lack of experience in caring for A.M. has changed, and the evidence shows an intent on his part to be a part of A.M.'s life. The evidence also shows Appellant's influence on her has had a positive effect. The court's modification of the previous order, by awarding sole custody to Appellee, was against the clear weight of the evidence, and the order overruling Appellant's motion for new trial was an abuse of discretion.

¶ 12 This Court reviews the evidence in an equity case to determine whether the trial court's order is contrary to the clear weight of the evidence, and if it is, shall enter the judgment that should have been entered. *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476. Under the clear weight of the evidence presented, we hold custody should be awarded to Appellant.

---

**3.** Appellant admitted he had spanked A.M., contrary to the order as to corporal punishment. Appellee testified that, although she said she went outside to smoke, she did continue to smoke, contrary to the order. If A.M. saw her smoking, she put out her cigarette and went about her business. Appellant testified A.M.'s clothes and hair smelled like smoke when he picked her up from Appellee's house.

¶ 13 The order overruling Appellant's motion for new trial of the order modifying custody in this case is reversed, and this case is remanded to the trial court with directions to enter judgment awarding custody of A.M. to Appellant, with reasonable visitation granted to Appellee.

¶ 14 REVERSED AND REMANDED WITH DIRECTIONS.

¶ 15 BUETTNER, P.J., concurs.

¶ 16 HANSEN, C.J., dissenting.

HANSEN, C.J. dissenting,

¶ 1 If we apply the equitable standard of review correctly here, we must affirm even though the evidence would have allowed a different result, unless we determine the decision is "clearly against the weight of the evidence".

¶ 2 It is for the trial court to determine the credibility of the witnesses and the weight and value to give to their testimony. *Estate of Lovely*, 1993 OK CIV APP 3, 848 P.2d 51.

¶ 3 I would affirm the trial court.