**Louis WELLS, Appellant,**

v.

**Doris WELLS, Appellee.**

No. 55631.

Supreme Court of Oklahoma.

July 20, 1982.

S. Daniel George, Sallisaw, for appellant.

B. C. Weiner, Legal Services of Eastern Okl., Inc., Okmulgee, for appellee.

BARNES, Vice Chief Justice:

On May 16, 1978 Louis Wells appellant in the current proceeding, filed a petition for separate maintenance. In response, Doris Wells, now appellee, filed a cross-petition for divorce. Doris Wells was awarded custody of the three (3) minor children in a divorce decree granted on August 10, 1978.

On July 17, 1979 Louis Wells filed a motion to amend the decree requesting custody of the children. By agreement the decree was amended on August 12, 1979, giving the appellant temporary custody until January 1, 1980. On March 4, 1980 the appellant filed a second motion to amend decree requesting custody of the children. The appellee filed a response to appellant's motion and filed a motion thereon to increase child support. On August 6, 1980 a hearing was held concerning appellant's and appellee's motions.

At the hearing, Louis Wells testified that he filed this motion to regain custody because his ex-wife was living with another man out of wedlock. He also stated that he and his ex-wife had discussed the matter and in these conversations Doris Wells informed the appellant that her living arrangements were not his concern. She also stated that she favored this living arrangement because in the event the relationship did not last there would not be any problems with divorce. Appellant also testified that his children objected to the arrangement and were dissatisfied with their residence.

After this evidence was presented the appellee demurred to the evidence. The trial court sustained the demurrer and appellant appeals from that order.

■ Appellant's first proposition of error is that the trial court erred when it sustained appellee's demurrer. This is an action of equitable cognizance and in such an action a demurrer to plaintiff's evidence will be treated as a motion for judgment, and in passing on such demurrer, the trial court should weigh and consider all the evidence submitted, whether favorable to plaintiff or not.[1]

■ Changes in custody must be justified on the basis of the best interests of the child.[2] The burden of showing such interests is on the party seeking change.[3]

■ In past cases we have stated that one of the factors to be considered in determining a child's best interest is the moral environment.[4]

■ We find that the appellant made a prima facia case for change of custody. Since no further testimony was offered by the parties the trial court erred in granting appellee's motion for judgment as such judgment was clearly against the weight of the evidence.[5] We find the proof called for an in-depth judicial assessment of the fitness of the mother's home which the children were compelled to share with her non-spousal mate. Since appellee has had no opportunity to present her evidence, we reverse and remand with instructions to grant a new trial and proceed in accordance with the views herein expressed.[6]

Because of our above stated disposition of this case, we find it unnecessary to address appellant's other propositions of error.

Appellee has cross-appealed the trial court's denial of her motion to increase child support.

■ The only evidence presented in support of the motion was her testimony that he had received a substantial wage increase subsequent to the divorce. Mother argues that this showing was sufficient to justify an increase in child support because in cases such as *Miller v. Miller*, Okl., 383 P.2d 873 (1963), the court allowed the reduction of

---

1. *Bridges v. Bridges*, 544 P.2d 493 (Okl.1975).

2. *Stanfield v. Stanfield*, 350 P.2d 261 (Okl. 1960), *Jackson v. Jackson*, 200 Okl. 333, 193 P.2d 561 (1948).

3. *Gibbons v. Gibbons*, 442 P.2d 482 (Okl.1968).

4. *David v. David*, 460 P.2d 116 (Okl.1969).

5. *Snow v. Winn*, 609 P.2d 678 (Okl.1980); *David v. David*, 460 P.2d 116 (Okl.1969).

6. *Geb v. Wilkins*, 399 P.2d 456 (Okl.1965).

child support payments based on *decreased* earning capacity. The order affirmed in *Miller* was supported by evidence concerning several factors relevant to child support and was not based solely upon the changed financial circumstances of one party. *Miller, supra* at 875, 876. Here there were no other factors presented. We therefore find the trial court did not err in denying mother's motion to modify the amount of child support.

REVERSED.

HODGES, HARGRAVE, OPALA and WILSON, JJ., concur.

IRWIN, C. J., and LAVENDER, SIMMS and DOOLIN, JJ., dissent.

OPALA, Justice, concurring:

The dispositive issue formed below by the evidence of the mother's non-spousal union did not require that the trial court make a comparison—on moral grounds—of the natural parents' relative fitness for custody award. Rather, the evidentiary posture called primarily for a full-scale judicial reassessment of the mother's home as a fit milieu for the minors. *Moral considerations need not be implicated in this analysis.* If the cohabiting mate were the mother's husband but the record showed that his presence had a disturbing effect on the children and on the various relationships within the mother's household, my legal position with respect to the anatomy of the case would be the same.

In short, I view the father's evidence as a sufficient probative foundation to challenge a *full-scale* judicial inquiry into the mother's home environment. Based on this approach, I am constrained to conclude that there was error in the premature termination of the trial in this equity case. The mother should have been called upon to meet the father's direct challenge to her household's fitness as a milieu for raising minor children in that community.

SIMMS, Justice, dissenting:

The only error made by the trial judge in this case was his belief that this Court

meant what it said in *Gibbons v. Gibbons*, Okl., 442 P.2d 482 (1968), and the plethora of cases following it.

It did not occur to the trial judge that he should be rendering judgments affecting the lives of these three children based on his own individualized notions of morality. He thought the test for changing custody was one of law, specifically:

(1) Whether this father's evidence showed that there had been a permanent, substantial and material change in conditions which directly affected the welfare of the children to a substantial or material extent; and

(2) Whether as a result of such change in conditions, the children would be substantially better off, with respect to their mental, temporal and moral welfare, if the requested change in custody was ordered. See, *Gibbons, supra.*

Under our existing guidelines, the trial judge decided the question correctly. No evidence was presented showing that this relationship had any adverse effect on the children.

This Court, on the other hand, abandons these and all other guidelines in its rush to agree with applicant father that a custodial parent's nonmarital cohabitation *in and of itself* creates a presumption that a change of custody is justified.

In doing so, the Court misstates the law as being simply a "best interests of the child" test. This is more significant, of course, than a mere misstatement: it is the pronouncement by this Court of a new rule. This new rule rejects years of established precedent by dispensing first with the burdens imposed by *Gibbons*, and then with the requirement that *all* relevant factors affecting a child's welfare be weighed. This requirement recognized that only rarely would one factor be conclusive and that stability of environment and a minimum of disruption are salient factors to consider. See, e.g., *Rice v. Rice*, Okl., 603 P.2d 1125 (1979); *Pirrong v. Pirrong*, Okl., 552 P.2d 383 (1976); *David v. David*, Okl., 460 P.2d 116 (1969); *Irwin v. Irwin*, Okl., 416 P.2d

853 (1966); *Fletcher v. Fletcher*, Okl., 362 P.2d 691 (1961).

This new test announced today depends on the movant being able to show that some aspect of the custodial parent's moral code does not coincide with that of a majority of this Court.

By removing the burdens of *Gibbons* and changing the focus of these actions from children, and how they are affected by circumstances, to parents, and how "nice" various judges think they are, we are indeed opening the floodgates and inviting ceaseless litigation. We do the children of divorced parents a disservice.

We have also stated on uncountable occasions that we will not modify a decision of the trial court in a custody matter unless it is so clearly against the weight of the evidence as to constitute an abuse of discretion.

We should follow that rule here and affirm the trial court.

I am authorized to state that Justices LAVENDER and DOOLIN join in the views expressed in this opinion.