Patricia NAZWORTH, Appellee,

v.

Barry NAZWORTH, Appellant.

No. 86066.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 19, 1996.

REIF, Judge.

This appeal arises from a proceeding brought by Barry Nazworth seeking to change custody of the parties' thirteen-year-old son and to receive a credit on his child support obligation for social security benefits paid directly to his son and daughter. Mr. Nazworth testified that he sought the change of custody of his son because: "He's requested to come live with me." He asked the trial court to interview his son and counsel for mother agreed to make the child available if the court chose to talk with him. However, counsel for mother also argued that the child's preference was not a permanent, substantial, and material change of conditions to warrant a change of custody. Without interviewing the child, the trial court agreed with counsel for mother and entered a directed verdict denying the motion to change custody. As to the credit for the social security benefits, the trial court did not give a direct credit toward the current support obligation. Instead, the trial court added the benefits paid directly to the children to mother's income for purposes of recomputing the parties' respective support obligations. The trial court also indicated that it would entertain a motion for attorney fees from mother's counsel, because the trial court felt the motion to change custody was frivolous. Mr. Nazworth seeks review of these decisions. For the reasons that follow, we reverse.

■ Mr. Nazworth's testimony that his son requested the change of custody was "proof [that] called for in-depth judicial assessment of the [existing custodial arrangement]." *Wells v. Wells*, 648 P.2d 1223, 1224 (Okla.1982). Therefore, it was error for the trial court to dispose of the motion for change of custody without taking and considering evidence from the child and custodial mother, if she desired to present it.

Mother has argued that the trial court's denial of the motion for change of custody is supported by the rule in *Davis v. Davis*, 355 P.2d 572, 575 (Okla.1960), that "the whims, wants and desires of a minor child are not the criteria for determining which parent should be granted custody." *See also Duncan v. Duncan*, 449 P.2d 267, 269 (Okla.1969). Additionally, there is authority that an ex-

Thomas T. Ellis, Ellis, Leonard & Buckholts, Duncan, for Appellee.

Nolan R. Hackler, Marlow, for Appellant.

pression of preference alone is not sufficient to constitute a change of circumstances to support a change of custody. *Marriage of Padbury*, 46 Or.App. 533, 612 P.2d 321, 323 (1980); *Merrill v. Merrill*, 82 N.M. 458, 483 P.2d 932, 933–34 (1971).

■ However, where the preference is explained by the child and good reasons for the preference are disclosed, the preference and supporting reasons will justify a change of custody. *Yates v. Yates*, 702 P.2d 1252, 1254 (Wyo.1985). It is almost a "universal rule that … when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to its future welfare, based upon facts and not mere whims, its wishes are one factor which may be considered by the court in determining custody … because the *consideration of such wishes will aid the court in making a custodial [decision]* which is for the best interests and welfare of the child." Annotation, *Child's Wishes as Factor in Awarding Custody*, 4 A.L.R.3d 1396, 1402 (1965) (emphasis added) (footnotes omitted).

Oklahoma case law and statutory law mirror this "universal rule." In the case of *Ex parte Hudspeth*, 271 P.2d 371, 373 (Okla. 1954), the supreme court upheld the trial court's custody determination because the child in question "was of the age and intelligence to give mature consideration to his own problems, and his discussion with the court was a factor which received serious consideration in settling the matter of his custody." Significantly, one of the earliest cases to consider this issue held that the "trial court erred in not taking into consideration the wishes of these children [ages 14, 12 and 10] in determining their custody," and reversed with directions that the trial court hold a hearing for the purpose of "taking into consideration the wishes of the children." *Bishop v. Benear*, 132 Okla. 116, 270 P. 569, 571–72 (1928). Even *Davis* and *Duncan* recognize that the court may consider the preference of a child who is of sufficient age to form an intelligent preference. This was also the statutory rule in Oklahoma for just over sixty years. *See* 30 O.S.1981 § 11 (repealed in 1983).

■ The current statutory authority governing a child's expression of a custodial preference is codified as 43 O.S.1991 § 113. The current statute does allow the trial court to determine "whether the best interest of the child will be served by the child's expression of preference." This is a good rule in cases involving an initial custody decision. However, where a change of custody is sought because a child has asked for the change, the child's interests are best served by "serious consideration" of the preference and the reasons for it, *Hudspeth*, 271 P.2d at 373, and "in-depth judicial assessment" of the current custodial arrangement. *Wells*, 648 P.2d at 1224. It may well turn out that the change of custody is not in the child's best interests, but such a determination cannot be made fairly and reasonably without hearing from the child.

■ The issue of crediting government dependency benefits toward child support payments "has given rise to an increasing amount of litigation in recent years." Michael A. DiSabatino, Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447, 463 (1996). "On the whole, the courts have shown a willingness to allow such a credit, albeit with varying degrees of procedural difficulty, if the benefits to the child can be said in some sense to have been generated by the efforts or qualifications of the obligor parent." *Id.*

The "procedural difficulty" encountered by the three Oklahoma cases to address this issue have included concern over (1) the intent of the divorce decree that the child support obligation be satisfied from social security disability payments *that were being made at the time of the divorce, Nibs v. Nibs*, 625 P.2d 1256, 1257 (Okla.1981); (2) equitable considerations that would affect whether social security disability benefits should be credited toward an unadjudicated support obligation to prevent adoption without the consent of the obligor parent, *Matter of Adoption of B.R.H.*, 823 P.2d 383, 387 (Okla. Ct.App.1991); and (3) how the credit should be applied under the statutory child support guidelines, *Wilson v. Stenwall*, 868 P.2d 1317, 1319 (Okla.Ct.App.1992).

In *Wilson*, 868 P.2d at 1319, the obligor father was allowed credit for the social security retirement dependent benefit being paid the child where the obligor father's retirement occurred after the original child support order was entered. The court held that "[t]he Social Security benefit paid to [the] child is not a gratuity [but] was earned by the wage earner, Father, during the period of his employment. In effect, the payments are insurance payments derived from the wage earner and are substituting for his lost earning power." The problem involved in *Wilson*, however, was that the social security benefit was partially credited to the mother by the trial court. In ruling that "Mother may not directly benefit by the fruits of Father's labor," the court of appeals did determine that "this benefit is certainly a portion of the total income of the parties, and Father must include these payments as income in the child support guidelines worksheet." *Id. Accord Miller v. Miller*, 890 P.2d 574 (Alaska 1995).

*Wilson* provides the proper guidance for disposition of the controversy in the instant case. Applying *Wilson* to the facts disclosed by the record leads us to conclude that the trial court erred (1) in its view that Mr. Nazworth received sufficient "credit" for the social security disability dependent payments to the children by adding the amount of those payments into mother's income for purposes of recomputing the parties' respective child support obligations, and (2) in ordering him to pay his portion of the recomputed obligation *in addition to* the social security benefits.

As a preliminary matter, we note that Mr. Nazworth's disability which arose after the entry of the divorce decree is a sufficient change of circumstances to warrant recomputation of his child support obligation and modification of the decree. Given the fact that neither Mr. Nazworth nor mother contest the trial court's findings concerning their income (other than whose income the children's social security benefits should be added), we will utilize those base amounts in applying *Wilson* and the child support guidelines. There appears to be no controversy over the trial court fixing income to mother in the amount of $590, or that Mr. Naz-

worth's social security disability benefit is $1,000.10. Pursuant to *Wilson*, the children's benefits are added to Mr. Nazworth's income, so that his income for purposes of applying the child support guidelines is $1,500.

Mr. Nazworth's income is about 72% of the parties' combined income while mother's income is about 28%. Because each child separately receives a social security benefit, the support obligation should be computed separately for each child, rather than using the "two children" column. For the parties' combined income of $2,090, the base amount per child is $281. Mr. Nazworth's 72% share of this is $205.13, and doubling this for both children is $410.26. When Mr. Nazworth's share of child care expenses—$95.68—is added to the base child support sum of $410.26, his total support obligation is $505.94. *This is the figure against which the $500 social security dependent disability benefit is to be credited.*

Accordingly, we vacate the trial court's order "crediting" the benefits, recomputing child support and modifying the decree. We enter the order that the court should have entered and fix Mr. Nazworth's total child support obligation, as stated above, at $505.94 against which he is entitled to a credit of $500 for the social security dependent disability benefits paid to the children.

Lastly, we agree with Mr. Nazworth that the trial court erred in determining that his motion to change custody was "frivolous." However, any award of attorney fees that may have been based on that determination is not properly before this court. Neither the record nor the order concerning an award of attorney fees has been submitted for review.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS ON THE MOTION TO MODIFY CUSTODY AND TO EFFECTUATE THE MODIFICATION OF CHILD SUPPORT AND CREDITS THEREON.

RAPP, C.J., and TAYLOR, P.J., concur.