1998 OK CIV APP 164

**Patti Dell COGET, Plaintiff/Appellant,**

**v.**

**Alan Todd COGET, Defendant/Appellee.**

**No. 90555.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 13, 1998.

N. Scott Johnson, Corbitt, Rineer & Johnson, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Bransford H. Shoemake, Shoemake Law Offices, Pawhuska, Oklahoma, for Defendant/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 One child was born of the marriage of Patti Dell Coget (Mother) and Alan Todd Coget (Father). Following their divorce, Mother had sole custody of the child and Father had visitation. In 1997, following the

filing of a motion to modify custody by Father, the trial judge placed the child with Father and Mother had visitation. This appeal followed.

¶2 A change in custody will not be disturbed on appeal unless it is so clearly against the weight of the evidence as to constitute an abuse of discretion. *See David v. David,* 1969 OK 164, 460 P.2d 116. In a hearing on a motion to modify custody, the burden is upon the movant to show a substantial change in conditions since entry of the last order or decree which bears directly upon the welfare and best interest of the child. *Stephen v. Stephen,* 1997 OK 53, 937 P.2d 92. As the Court notes in *Fox v. Fox,* 1995 OK 87, ¶7, 904 P.2d 66, 69:

> The evidentiary requirements for a change of a permanent custody order are well established. In *Gibbons v. Gibbons,* 442 P.2d 482 (Okla.1968), we held that the parent asking for modification must establish: 1) a permanent, substantial and material change in circumstances; 2) the change in circumstances must adversely affect the best interests of the child; and, 3) the temporal, moral and mental welfare of the child would be better off if custody is changed. Finding that the paramount consideration in awarding custody on a motion to modify is what appears to be in the best interests of the child in respect to its temporal, mental and moral welfare, and the entire determination must be in light of what is in the child's best interest, *Gibbons* was reaffirmed in *David v. David,* 460 P.2d 116 (Okla.1969). In *David v. David,* 460 P.2d 116, 117 (Okla.1969), we said "The law is clear that in a hearing upon a motion to modify the burden is upon the applicant to show a substantial change in conditions since the entry of the last order or decree which bears directly upon the welfare and best interest of the child." And more recently in *Gorham v. Gorham,* 692 P.2d 1375 (Okla.1984), we emphasized the necessity to show a direct and adverse effect on

the child's best interests. Recognizing that it is not the function of this Court to enter a judgment based solely upon individualized conceptions of morality, *Gorham v. Gorham* concluded that, in considering a parent's behavior and a child's best interests, the determinative factor is always the effect of the parent's behavior on the child. Mother argues the trial court abused its discretion in finding that a change of circumstances had occurred such that it would be in the child's best interest that custody should be placed with Father. Applying the standards stated above and based upon the record transmitted on appeal, we agree.

¶3 Father's motion to modify custody was grounded in his assertion that the child's temporal, moral and mental welfare were adversely affected by the fact she resided with Mother and Mother's "live-in paramour." The evidence presented at hearing indeed does place the start of this living arrangement after the last order on custody.[1] However, this situation was clearly not a *permanent* condition. As presented in this record, its transitory nature is demonstrated by the fact that Mother and the "paramour" were married by the time hearings were conducted on Father's motion.

¶4 Mother's husband was not called to testify, and he was excluded from the courtroom under the rule of sequestration. There is no evidence of any adverse impact upon the child due to Mother's husband's presence in the home, and Father did not cite any conduct by Mother other than the non-marital cohabitation which he contended was adverse to the child's temporal, mental or moral welfare. To the contrary, the evidence was that the child's school grades had improved since Mother's marriage and the new family had commenced regular church attendance.

¶5 We are aware, as Father states, that the child, who was nine years old at the time of the hearings, expressed a desire to

---

1. The original decree appears to be the only prior time when custody was at issue. Mother testified that she and her current husband began living together as roommates only and that she paid him rent. A docket sheet reflects that an agreed modification of child support was filed and this appears to have occurred after the apparent start of Mother's living arrangement. However, neither party contends, and the record does not indicate, that custody was reconsidered at the time child support was modified.

live with Father. The preference of a child is a factor which may be considered in modifying custody where the child is of sufficient age, intelligence and discretion. *Davis v. Davis*, 1960 OK 196, 355 P.2d 572. When for good reasons and well supported by facts, the expressed preference of a child may assist the court in determining that a change of custody is warranted and in assessing what is in the child's best interests and welfare. *See Nazworth v. Nazworth*, 1996 OK CIV APP 134, 931 P.2d 86. However the evidence on this point in this record is equivocal and not sufficient to constitute a permanent, material and substantial change of circumstances such as justifies a modification in the custody of this minor.[2]

¶ 6 Father's brief states he was concerned his child was not "receiving proper parental supervision," but this record contains nothing whatsoever about supervision either generally or specifically, or what child care arrangements either party used when they had the child. Father's brief contains several other factual allegations for which he gives no record citations and for which our review of the appellate record does not reveal any evidentiary basis.[3] These matters could not, therefore, properly have been a basis for the order on appeal. We must review the appropriateness of the change in custody based only upon the actual record, not the parties' claims.

¶ 7 Father points to nothing in this record other than the pre-marital cohabitation and the expression of the child's preference to support his contention that there was a permanent, substantial and material change in the child's circumstances since the last order affecting custody. Neither party claims the other is unfit, nor does the record demonstrate that either is unfit. This child is attached to both parents and they are attached to her. Like the father in *Fox*, Father does not point to any direct harm or signs that the child's school performance and behavior patterns or relationships with the immediate and extended family, peers, and community have been adversely affected by Mother's lifestyle or eventual marriage.

■ ¶ 8 Based upon this record, the evidence does not present the requisite proof of a permanent, material and substantial change of circumstances adversely affecting the temporal, mental and moral welfare of the child. That proof being absent, the trial court abused its discretion in modifying custody. Without custody being modified, there was no basis for any modification in the previously existing child support order. The trial court's order is reversed and, upon remand, custody shall be restored to Mother. Having so concluded, we need not address the other issues raised by Mother.

¶ 9 At the time this opinion is adopted, it is likely school has commenced for the child at Father's residence. Upon remand, the trial court may consider, if requested to do so, a delay in the restoration of custody to Mother until not later than the end of the current school term (semester, trimester or quarter, depending on the school's calendar).

REVERSED AND REMANDED

HANSEN, J., and BUETTNER, P.J., concur.

---

2.  For example, the only reason cited by the child during an *in camera* interview for wanting to live with Father was "I get to play with my [half] brother and [half] sister." Although there was evidence that the child had previously expressed a desire to live with Father to Mother, Father, and to others, when she was initially asked by the trial court where she wanted to live, she said she did not know. She expressed to the trial court a desire to live with Father only after what can best be described as a generally suggestive interview in which the trial court appeared to emphasize the good things about living with Father.

3.  For example, Father's brief also claims Mother separated from and reconciled with her husband, changed residences and changed the child's school between two hearings. There is absolutely nothing in this record to support this assertion or to support his further claim the child does not like Mother's husband.