2006 OK CIV APP 23

**Melody EIMEN, Petitioner/Appellee,**

v.

**David EIMEN, Respondent/Appellant.**

**No. 100,966.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 18, 2005.

Certiorari Denied Feb. 27, 2006.

N. Scott Johnson, Sneed Lang, P.C., Tulsa, OK, for Petitioner/Appellee.

Michael J. King, M. Jean Holmes, Winters, King & Associates, Inc., Tulsa, OK, for Respondent/Appellant.

Opinion by ROBERT DICK BELL, Judge.

¶1 Respondent/Appellant David Eimen (Father) appeals the trial court's order denying his motion to modify joint custody plan and child support and the trial court's attorney fee award. We reverse and remand for further proceedings consistent with this opinion.

¶2 Father and Petitioner/Appellee Melody Eimen (Mother) married in 1984 and divorced by an agreed decree entered December 31, 2002. Three children were born dur-

ing the marriage, D.E., born 1985,[1] M.E. born 1987 and G.E. born 1989. The parties agreed to a joint child custody plan. Child support was based on 50%–50% split of shared physical custody. For a short time following the divorce, the parties alternated possession of the family residence. Shortly thereafter, Mother purchased a home. Father remained in the family home. The parties intended to weekly alternate physical custody of the children. Father testified that for several months following the divorce, Mother did not exercise her right to shared custody. During that time, the boys lived with Father continuously. Eventually, the boys began visiting with their Mother, but considered the family home, now Father's home, to be their permanent physical home. Father paid child support of $700.00 per month, he paid 100% of the boys' private school tuition, and the parties split the costs of extracurricular activities. Mother testified she waived her claim for additional support in exchange for Father's agreement to pay the children's private school tuition.

¶3 On March 17, 2003, Father filed a motion to modify the physical custody provisions of the joint custody plan. He also sought to modify his child support obligation. In response, Mother sought to enforce the agreed joint custody plan. Neither party sought to terminate the joint custody plan. In fact, Father's counsel reiterated on the record "We are not asking this Court to change the joint custody arrangement. We're asking this Court to change the split time visitation arrangement within the confines of the joint custody arrangement."

¶4 The court appointed a parenting coordinator who opined by written report that the boys preferred the convenience of living at Father's home. The parenting coordinator found no indication that Father was unduly influencing the boys against visitation with Mother. A separate counselor opined the boys loved their Mother but resisted living with her. The counselor testified Father was passively interfering with visitation by not encouraging same.

¶5 During an *in camera* interview with the trial judge, the teenage children expressed their preference to live in the family home, now Father's home. The children did not wish to shift from home to home on a weekly basis because it was inconvenient and disruptive. They explained the family home was more comfortable because they grew up in this home, it was familiar, and their personal effects were located in the home. They also had more privacy in the family home because two of the children had to share a room at Mother's home. The children also preferred that the family home was located a short distance from Father's work. This enabled Father to come home for lunch, attend sporting practice and events and offer transportation more readily than Mother, whose office was located downtown.

¶6 The issue of Father's child support obligation was also addressed at trial. Father testified his child support obligation was a strain financially because his income was insufficient to cover all these expenses. Father stated that he had to use his savings to pay the private school, daily support of the boys, and child support.

¶7 At the conclusion of the merits trial, the trial court found Father failed to sustain his burden of showing a substantial, permanent, continuing change in circumstances since entry of decree of divorce or that the children would be better off with the requested modifications. The court also found the children failed to state good or well-supported reasons for a change because the children had always opposed the joint custody plan. Thus, there had been no change in the children's attitudes. The trial court granted Mother's demurrer as to custody of M.E. and G.E., but overruled her demurrer as to D.E. because he was 18 years old. The parties agreed to modify Father's child support obligation to extract the amount allocated to D.E.

¶8 The trial court's journal entry was entered June 30, 2004. Thereafter, Mother sought and was awarded attorney fees and

---

1. D.E. attained the age of 18 during these proceedings. Therefore, D.E. "aged out" for pur-   poses of custody and child support.

costs. Father now appeals from the trial court's orders.

¶ 9 The trial court's decision regarding custody will not be disturbed on appeal unless it is clearly against the weight of the evidence or an abuse of discretion. *Daniel v. Daniel*, 2001 OK 117, ¶ 21, 42 P.3d 863, 871. The party appealing from the custody award has the burden to show the trial court's decision is erroneous and contrary to the children's best interests. *Id.*

¶ 10 Father first contends the trial court erred in failing to terminate the joint custody plan pursuant to *Daniel v. Daniel*, 2001 OK 117, 42 P.3d 863. In *Daniel*, the court held when a party seeks to terminate a joint custody plan because it "is not working" and place custody with one parent only, "[t]he trial court must proceed as if it is making an initial custody determination and award custody in accordance with the best interest of the child, as if no such joint custody decree had been made." *Id.* at ¶ 21, 42 P.3d at 871. Father claims the joint custody plan in the instant case failed due to lack of communication between the parties.

¶ 11 Mother counters Father may not assert, for the first time on appeal, that the joint custody plan should be terminated. She points out that Father did not seek to terminate the joint custody plan during the trial court proceedings. Instead, he only sought to modify the physical custody arrangements set forth in that plan. Mother's contention has merit. Because Father failed to request the termination of the joint custody plan during the trial court proceeding, he is prohibited from doing so for the first time on appeal. *See Mothershed v. Mothershed*, 1985 OK 23, ¶ 28, 701 P.2d 405, 411–12. This Court will not make first-instance determina-

tions of law or fact; that is the role of the trial court. *Dyke v. Saint Francis Hosp., Inc.*, 1993 OK 114, ¶ 11, 861 P.2d 295, 300.

¶ 12 Notwithstanding, because Father appealed the trial court's custody order, we will address whether the trial court failed to apply the correct law when it sustained Mother's demurrer. Here, the trial court applied the "change of circumstances" test from *Coget v. Coget*, 1998 OK CIV APP 164, 966 P.2d 816, to deny Father's motion. Under *Coget*, the party who seeks to transfer sole custody from one parent to another parent has the burden to show a substantial change in conditions since the entry of the last custody order. *Id.* at ¶ 2, 966 P.2d at 817.[2] Father insists the "change of circumstance" test is inapplicable because he did not seek to transfer custody from one parent to the other. Father's contention has merit. Where, as here, a party only seeks to modify the terms of a joint custody plan as to physical custody, 43 O.S.2001 § 109(F) controls. This section provides:

F. The court also may modify the terms of the plan for joint care, custody, and control upon the request of one parent. The court shall not modify the plan unless the modifications are in the best interests of the child.

Because § 109(F) controls, it was error for the trial court to apply the "change of circumstances" test rather than determining the children's best interests.

¶ 13 Notwithstanding the trial court's legal error, reversal is not warranted unless Father sustained his burden of showing the modification of physical custody was in the children's best interests. A correct judgment will not be disturbed on appeal even when the trial court applied an incorrect theory or reasoning in arriving at its

**2.** "The evidentiary requirements for a change of a permanent custody order are well established." *Fox v. Fox*, 1995 OK 87, ¶ 7, 904 P.2d 66, 69. The parent asking for modification must establish: "1) a permanent, substantial and material change in circumstances; 2) the change in circumstances must adversely affect the best interests of the child; and, 3) the temporal, moral and mental welfare of the child would be better off if custody is changed." *Id.* Because the paramount consideration in awarding custody on a motion to modify is what appears to be in the best interests of the child in respect to the child's temporal, mental and moral welfare, the entire determination must be in light of what is in the child's best interest. *Id.*

conclusion. *Harvey v. City of Okla. City,* 2005 OK 20, ¶ 12, 111 P.3d 239, 243.

■ ¶ 14 Father contends under 43 O.S. Supp. 2002 § 113 [3] and *Nelson v. Nelson,* 2004 OK CIV APP 6, 83 P.3d 911, the children's preference to live in Father's home was sufficient evidence to support a change in physical custody. We agree. When a change of custody is sought because a child has asked for the change, then the child's interests are best served by serious consideration of the child's preference. *Nelson* at ¶ 2, 83 P.3d at 912–13, *citing Nazworth v. Nazworth,* 1996 OK CIV APP 134, 931 P.2d 86. *See* also 43 O.S. Supp.2002 § 113. If the child explains good reasons for such preference, then the child's preference and supporting reasons will justify a change of custody even though the party seeking the change failed to demonstrate a change in circumstances. *Nelson* at ¶ 4, 83 P.3d at 913.

¶ 15 Here, the evidence revealed the teenage children preferred to reside in the family home because the split physical custody arrangement was inconvenient, disruptive and uncomfortable. Although Mother understandably argues to the contrary, we cannot say these reasons are unfounded, juvenile or lacking in merit. Considering the ages of these children and their clear preference to live with Father, we find Father sustained his burden of showing the modification was in the children's best interests. Accordingly, we hold the trial court's order denying such modification was against the clear weight of the evidence and an abuse of discretion and should be reversed.[4]

¶ 16 The trial court's order denying Father's motion to modify child support is likewise reversed because the child support computation was based on a "shared parenting time" formula which will necessarily be modified as a result of this opinion. On remand, the trial court is directed to recalculate the parties' respective child support obligations under the new physical custody arrangement.

¶ 17 Father also appeals the trial court's attorney fees award. It appears the trial court awarded attorney fees against Father on the basis that he prolonged the litigation and exacerbated expenses by filing his motion to modify within three months of the entry of the agreed decree of divorce. It further appears the trial court was influenced by the fact that Mother successfully defended against the motion to modify. Because we reverse the trial court's order denying Father's motion to modify, we cannot find how Mother qualified for the benefit of attorney fees through the process of a judicial balancing of the equities. *See King v. King,* 2005 OK 4, ¶ 30, 107 P.3d 570, 581–82. Con-

---

**3.** Section 113 provides:

A. In any action or proceeding in which a court must determine custody or limits of or period of visitation, the child may express a preference as to which of its parents the child wishes to have custody.

B. 1. The court shall determine whether the best interest of the child will be served by the child's expression of preference as to which parent should have custody or limits of or period of visitation rights of either parent. If the court so finds, the child may express such preference or give other testimony.

2. If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits of or period of visitation. The court shall not be bound by the child's choice and may take other facts into consideration in awarding custody or limits of or period of visitation. However, if the child is of a sufficient age to form an intelligent preference and the court does not follow the expression of preference of the child as to custody, or limits of visitation, the court shall make specific findings of fact supporting such action if requested by either party.

3. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.

C. If the child expresses a preference or gives testimony, such preference or testimony may be taken by the court in chambers without the parents or other parties present. If attorneys are not allowed to be present, the court shall state, for the record, the reasons for their exclusion. At the request of either party, a record shall be made of any such proceeding in chambers.

**4.** Because we reverse the trial court's judgment denying Father's motion to modify, it is not necessary to consider Father's remaining allegations of error concerning custody.

sequently, the trial court's order awarding attorney fees to Mother is also reversed.

¶ 18 REVERSED.

ADAMS, P.J., and MITCHELL, J., concur.