IN RE THE MARRIAGE OF DUNLAP



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE MARRIAGE OF DUNLAP

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE MARRIAGE OF DUNLAP
2019 OK CIV APP 75
Case Number: 116914
Decided: 11/05/2019
Mandate Issued: 12/05/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 75, __ P.3d __

 
IN RE THE MARRIAGE OF:

SHARON DUNLAP, Petitioner/Appellant,
v.
DAVID DUNLAP, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKFUSKEE COUNTY, OKLAHOMA

HONORABLE LAWRENCE W. PARISH, TRIAL JUDGE

AFFIRMED

Jason M. Lile, ALLEN & GARRETT, ATTORNEYS, Tulsa, Oklahoma, for Petitioner/Appellant

Rod W. Wiemer, ROD W. WIEMER P.C., Okmulgee, Oklahoma, for Respondent/Appellee

P. THOMAS THORNBRUGH, JUDGE:

Sharon Dunlap (Mother), appeals a decision denying her motion to modify custody of minor children, D.D.D, Jr., and D.D.D. On review we affirm the decision of the District Court.

FACTS AND PROCEDURAL BACKGROUND

The parties were divorced on March 3, 2011, and a Decree of Dissolution of Marriage was entered granting custody of the party's minor children, D.D.D. Jr., and D.D.D., to Petitioner, Sharon Dunlap (Mother), subject to Respondent David Dunlap's (Father) specific rights of visitation. On January 31, 2014, Father filed a motion to modify custody of both children alleging that Mother had hidden the children for an extended period of time.[1] The court granted Father emergency temporary custody which he maintained through a series of contentious court proceedings until November 28, 2016, at which time the court (with the agreement of Mother) placed sole custody of the minor children with Father subject to Mother's right of specified visitation.

On April 10, 2017 (about 5 months after the court awarded custody to Father), Mother moved to modify the Agreed Order to place custody with her for the sole reason that the children had expressed a preference to live with Mother. Father filed a Motion to Dismiss with supporting brief and a Motion to Settle Journal Entry and for Ancillary Relief on July 14, 2017.

On November 14, 2017, the court heard all pending motions; conducted an evidentiary hearing on Mother's motion to modify; and, at the specific request of Mother, conducted an in camera interview with the children as provided for by 43 O.S. 2011 § 113. At the time of hearing, DDD Jr. was 15 years of age and his younger brother, DDD, was 12. Following hearing, the court announced its decision in open court denying Mother's motion to modify.[2]

STANDARD OF REVIEW

A trial court is vested with discretion in matters involving custody. Rowe v. Rowe, 2009 OK 6, ¶ 3, 218 P.3d 887. The findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence or an abuse of discretion. Daniel v. Daniel, 2001 OK 117. ¶ 21, 42 P.3d 863. "The burden is upon the party appealing from the custody and visitation award to show that the trial court's decision is erroneous and contrary to the child's best interests." Id. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." In re BTW, 2008 OK 80, ¶ 20, 195 P.3d 896 (footnote omitted).

In order to review a change in custody based upon "a change in circumstances," we use the test established by Gibbons v. Gibbons, 1968 OK 77, 442 P.2d 482, to determine whether the parent asking for a change in custody has established a permanent, substantial and material change in condition such that the child would be substantially better off if the requested change in custody was ordered. A well-founded custody preference by a child is sufficient to evidence a change in condition that can trigger this "best interests" inquiry. Nelson v. Nelson, 2004 OK CIV APP 6, ¶ 4, 83 P.3d 911.

ANALYSIS

Mother briefs three propositions of error as follows:

1. The court's decision to interview the minor children, in camera, violated the mandates of 43 O.S. § 113 (B) and (C);

2. The court did not follow the guidance of the Oklahoma Supreme Court outlined in Ynclan v. Woodward, 2010 OK 29, 237 P.3d 145, when conducting the interviews of the children; and

3. The trial court's decision denying Mother's motion to modify custody constituted an abuse of discretion by failing to find a change of circumstances and award custody based upon the childrens' expressed preference.

I. THE COURT'S DECISION TO INTERVIEW THE MINOR CHILDREN

Mother first argues that the entire in camera process should not have taken place because the court "could have simply relied upon the parties' testimony that the children had expressed a preference to live with their Mother." Aside from the fact that the Oklahoma Legislature has specified an in camera hearing as a proper means to discover a child's preference, rather than forcing the court to rely on hearsay statements, it is difficult to understand Mother's objection since it was Mother, who, after testifying that the children had come to her multiple times expressing a desire to live with her, was insistent that the Court would, "have to talk to the boys. The boys are the ones that have told me things."

At close of her direct testimony, Mother's attorney made the following request of the court:

MS MASTERS: Judge we would request that the court interview the children, just so that we can at least have their preference in camera away from any of this drama and on the record.

The record discloses that Father, while preferring to give testimony himself as to whether or not the children had expressed a preference to live with Mother, nevertheless acquiesced in the court's decision to interview the children, in camera.[3]

In the first impression case of Ynclan v. Woodward, 2010 OK 29, ¶ 16, 273 P.3d 145, which Mother relies on to support her argument, the court noted, "In most cases, if the parents' consent or agree to the interview, a trial court may hold an in camera preference interview without the parents. If a parent does not object to the procedure at the time of the interview then any objection is generally waived on appeal." This is in accord with our holding in Mullendore v. Mullendore, 2012 OK CIV APP 100, ¶ 4, 288 P.3d 948, where we declined to consider an argument first raised on appeal noting that, "Generally, this court does not reach issues the appealing party fails to raise in the district court, and we decline to do so here."

Before the trial judge made his decision to interview the children he reviewed the case of Lowry v. Lewis, 2014 OK CIV APP 9, 317 P.3d 230 proffered by Mother's attorney, and concluded, "I will talk to the two children, because I think the law requires that I do this. So I'll ask you all to leave the courtroom." We agree with the trial court's assessment since we have previously written that the testimony of a parent that the child requested the change in custody was, "proof that called for in-depth judicial assessment of the existing custodial arrangement and would be error for the trial court to dispose of the motion for change of custody without taking and considering evidence from the child and custodial mother, if she desired to present it." Nazworth v. Nazworth, 1996 OK CIV APP 134, ¶ 4, 931 P.2d 88.

The statutory framework which provides for the manner in which courts may consider the preference of the child in awarding custody is set forth at 43 O.S. § 113 which states:

A. In any action or proceeding in which a court must determine custody or limits to or periods of visitation, the child may express a preference as to which of the parents the child wishes to have custody or limits to or periods of visitation.

B. The court shall first determine whether the best interest of the child will be served by allowing the child to express a preference as to which parent should have custody or limits to or periods of visitation with either parent. If the court so finds, then the child may express such preference or give other testimony.

C. There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference.

D. If the child is of sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits to or periods of visitation. Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation.

E. If the child is allowed to express a preference or give testimony, the court may conduct a private interview with the child in chambers without the parents, attorneys or other parties present. . . .

At the time of the hearing, DDD Jr., was 15 years of age and his younger brother, DDD was 12. Mother testified that both of the children are "very intelligent, very good kids." Following the in camera interview the trial judge complemented each of the parents noting, "You have two really intelligent young men."

We find the court's determination to conduct an in camera interview of the minor children's custody preference was done in accordance with Mother's request, was without objection, and was well within the guidelines advanced by case law and the provisions of §113. We find no error in the court's decision to interview the children in camera.

II. THE GUIDANCE THE OKLAHOMA SUPREME COURT OUTLINED IN YNCLAN V. WOODWARD

Mother next argues that the in camera interview in this case violated the guidelines of Ynclan v. Woodward, 2010 OK 29, 237 P.3d 145, because during the interview, the judge eventually asked each of the brothers, "Where do you want to live?" Part of ¶ 13 of Ynclan, which includes a broad survey of the laws of several states regarding the procedure and purpose of a trial judge conducting a private in camera interview with a child, includes the statement:

Nor should a child be directly asked where the child would rather live because specifically asking preference provides an opportunity for parental manipulation or intimidation of the child as well as an opportunity for the child to manipulate the parents.

In assessing Mother's claim we consider whether this statement in ¶ 13 of Ynclan is in the nature of a rule, a "guideline" or merely an observation of the law of another state? The final rule of Ynclan is stated at ¶ 19: "[W]e hereby adopt the following guidelines for trial courts to utilize when planning to conduct an in camera custodial or visitation child preference interview." We note that the statement that a child should not be directly asked where the child would rather live is not part of the guidelines stated in ¶ 19. We conclude that the absence of the "don't ask" rule in the Ynclan court's final holding, and the context of ¶ 13 as a broad survey of general foreign law, does not promulgate a rule forbidding a trial judge from eliciting a statement of preference as suggested by Mother.

We also note the procedural difficulty, if not impossibility, of statutorily specifying a hearing for the purpose of the child expressing a preference, but prohibiting the judge from asking as to that preference. Interpreting ¶ 13 of Ynclan as setting additional rules to those actually stated in ¶ 19 would require a trial court to engage in some form of specious general conversation during a § 113 interview while constantly attempting to "maneuver" the child into a "spontaneous" expression of a preference. The difficulty of this process cannot be underestimated because even an indirectly elicited expression of a child's preference will be subject to criticism by the non-prevailing parent depending upon how far the court "hinted" that it would like the child to express a preference.

Mother's claim here is an example of this tendency. Disparaging the court's interview as "farcical" Mother shows a captious inclination to mischaracterize the court's effort to discharge its duty to ascertain and give "serious consideration" to the brothers' custody preference, while at the same time being sensitive to how the children are coping with the divorce, the pressures put on the children by the divorce, as well as trying to ascertain the motive of the children in stating a preference. See, e.g., Foshee v. Foshee, 2010 OK 85, ¶ 13, 247 P.3d 85.

While Mother claims in her brief in chief that the younger brother, D.D.D. (age 12), was rendered "emotionally unable to give reasons why he wanted to live with Mom and discouraged by the court from being allowed to continue," the transcript indicates that the child was in fact encouraged to "just take your time. Just tell me in your own words (long pause) or, if you can't think of anything right now, that's fine too."

Where Mother claims that the older brother, D.D.D. Jr., was "scolded" when he offered to answer for his younger brother we read in the transcript the simple and appropriate statement of the court, "No, you don't tell. Let him--."

Trial judges have been given great latitude in the manner in which they are allowed to exercise their sound discretion in the interview of children permitted under § 113 and wisely so. Our review of the record discloses that the trial judge here made appropriate efforts to place the children at ease as the in camera interview began; that he appropriately acknowledged to D.D.D. Jr. that the situation the children found themselves in was difficult and even unfair, and that he offered the children a neutral place in which to state any preference they might want him to consider.

On balance, we find the court's interview was appropriate given the age, maturity, and other issues presented by the parties; and that the court fairly characterized and summarized the facts it took into consideration as a result of the interview as it related to the custody decision. We decline to find that the court abused its discretion it its interview of the children here and reject Mother's claim.

III. THE EXPRESSION OF PREFERENCE BY THE MINOR CHILDREN AND THE GIBBONS TEST REQUIRING A CHANGE OF CIRCUMSTANCES

In her last proposition of error, Mother asserts that the trial court abused its discretion by failing to award custody based upon the childrens' expressed preference as disclosed in this record. Mother's claim invites us to briefly review the evidentiary significance of the "rebuttable presumption" provided by § 113(C) that "There shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference," and the statement of § 113(D) that:

If the child is of a sufficient age to form an intelligent preference, the court shall consider the expression of preference or other testimony of the child in determining custody or limits to or periods of visitation. Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation.

These statutes may impact the efficacy of the children's statement of preference both in establishing the change of condition under Gibbons when the expressed preference is the only change in condition relied on by the moving party, and the importance of other testimony and evidence considered by the court in making its custody decision under the facts of this case.

A. The Rebuttable Presumption

Mother argues that the trial court must have abused its discretion in not awarding custody in line with the two brothers' stated preference, since by "definition of law" they were presumed to be able to express an intelligent preference with regard to the requested change of custody.

The presumption created by § 113(C), however, is exactly that stated by statute -- that "a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference." (Emphasis added). It does not establish that the preference is actually intelligently considered, or should be a controlling factor. The preference of the child is just that -- a preference to be considered among many factors. The fact that a child is permitted to tell the court what he wants does not necessarily establish what he needs or what is in his best interest. As § 113(D) clearly states, "Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation." We noted in Nazworth, 1996 OK CIV APP 134, ¶ 6, that where a change in custody is sought because the child has asked for the change, "It may well turn out that the change in custody is not in the child's best interest . . . ."[4]

Mother's real complaint has very little to do with her claims concerning the court conducting the interview in camera, or even in the way in which the court conducted the interview. At the end of the day the court did interview the children, and they did express a recorded preference in favor of Mother. Nonetheless, the court found that a change of custody to live with Mother was not in the children's best interest. Section 113(D) is clear that "Interviewing the child does not diminish the discretion of the court in determining the best interest of the child. The court shall not be bound by the child's choice or wishes and shall take all factors into consideration in awarding custody or limits of or period of visitation." (Emphasis added).

We have considered the role of the child's preference in a line of cases originating from early opinions of the Supreme Court which held that the trial court was not bound by the child's opinion since, "[T]he whims, wants and desires of minor child are not the criteria for determining which parent should be granted custody of minor child." Duncan v. Duncan, 1969 OK 7, 449 P.2d 267, Davis v. Davis, 1960 OK 196, 335 P.2d 572. We concluded in Nazworth that, "where the preference is explained by the child and good reasons for the preference are disclosed, the preference and supporting reasons will justify a change of custody." (Emphasis added.) Although the "consideration of such wishes will aid the court in making a custodial [decision] which is for the best interests and welfare of the child" this is only "one factor which may be considered by the court in determining custody." See Nazworth at ¶ 4

In Coget v. Coget, 1998 OK CIV APP 164, 966 P.2d 816, we considered the role of the expressed preference of a minor child who was nine years old at the time of the hearing and required that the child's preference be backed by good reasons and well supported facts. We noted that the stated expression of the child that she would "get to play with her half-brother and half-sister" was not sufficient to "constitute a permanent, material and substantial change in circumstances such as justifies a modification in the custody of this minor." See Coget at ¶ 5 and n.2.

In Ynclan v. Woodward, the Supreme Court opined, without discussion of the cases from the Court of Civil Appeals, that the child's preference (in an original custody proceeding) should never be the sole determinant in the custody decision; and in Foshee v. Foshee, 2010 OK 85, ¶ 13, 247 P.3d 1162 (in a case involving the modification of joint custody) the Court held that "the preference of the child is just that -- a preference. We have never held that child preference is 'the' deciding factor when determining custody or modifying custody. Rather it is merely one of many facts which the trial court is required to consider."

B. The Statement of Preference Must Be Well-Reasoned to Support a Change of Circumstances under Gibbons

We note that Mother's argument appears to expand the presumption that a child can form an intelligent or well-reasoned preference into a presumption that the child's expressed preference is intelligent and well-reasoned. We disagree. The fact that a child may be capable of making an intelligent and well-reasoned preference does not equate to a finding that any preference expressed by a child is intelligent and well-reasoned.

Most recently in the case of Lowry v. Lewis, 2014 OK CIV APP 9, ¶ 21, 317 P.3d 230, we considered a father's motion to modify custody based upon the expression of preference stated by a 12-year-old, and changed custody after an in camera interview with the child. We relied upon Nazworth, and found that the stated preference of the 12-year-old child was sufficient to establish a change in circumstances required by Gibbons, because her explanation, supporting reasons and factors that led to her preference were, "thoughtful, intelligent, and well-reasoned" and had been formed, "over a significant period of time [two years]."

In contrast to Lowry, there is no indication here that the children's stated preference was formed over any period of time greater than the relatively short period of five months since they had been placed in Father's custody by agreement of Mother. Nor did the stated preference seem to be particularly well reasoned. Both children expressed their love for their mother and father. Twelve-year-old D.D.D. was unable to think of any certain reason why he wanted to live with Mother, and we agree with the trial court that D.D.D. Jr.'s reasons tended to center on the fact that there seemed to be "a few more rules at dad's house than there is at mother's house."

It is fundamental that in a proceeding to modify provisions of an order relating to custody of a child, the burden of proof is upon the moving party to show a substantial change in conditions since the entry of the order sought to be modified. The change must bear directly upon the welfare and best interest of the child or show that material facts bearing upon the welfare of the child were unknown to the court at the time the order sought to be modified was entered. The fact that a well-reasoned preference and the reasons underlying it are to be considered and evaluated does not allow the court to bypass the requirements of Gibbons. Mullendore, 2012 OK CIV APP 100at ¶ 12.

The trial court did not err in finding that a change in custody was not in the best interests of the minor children in this case and, we find after close review that the statement of preference relied upon by the Mother was wholly insufficient to support the modification she requested. Moreover, the other evidence considered by the court clearly supported its decision denying Mother's motion to modify.

C. Other Factors Considered by the Court

While Mother primarily relied upon the "stated preference" of the children to live with her as the basis for her motion to modify, she also testified generally that she had concerns about the children going back and forth because D.D.D. Jr. cries and is very upset on Fridays when he comes to visit and does not want to go home to Father's on Monday. The interview with the children failed to substantiate this claim.

Mother also testified that she offers a nurturing environment for the children. On cross-examination, Mother testified that Father had provided additional visitation other than that which had been ordered and had been flexible with regard to visitation. Mother testified that she had no proof of anything detrimental happening to the boys while in Father's custody and that both children were outstanding students and that Father supported them in their extracurricular activities.

The trial court also considered testimony from Mother admitting she had made a bad decision to keep the boys from Father for approximately 8 months before custody was transferred to Father, and she had no explanation as to why she had paid "zero" in child support since November of 2016.

Father testified that he had minor concerns that the boys' hygiene needs were not being attended to adequately when they were with their Mother; and that D.D.D. Jr. had been reported as falling asleep in class and had not turned in some assignments after a weekend visitation with his Mother.[5] That aside, Father testified that D.D.D. Jr. was a straight A student and that D.D.D. had made a perfect score on the "gifted and talented test." Father testified that both boys excelled in sports and presented no unusual disciplinary problems.

CONCLUSION

Custody orders will not be disturbed on appeal unless found to be against the clear weight of the evidence. Hoedenbeck v. Hoedenbeck, 1997 OK CIV APP 69, ¶ 12, 948 P.2d 1240. In reviewing such custody orders, deference will be given to the trial court since the trial court is better able to determine controversial evidence by its observation of the parties, the witness and their demeanor." Id., at ¶ 10.

Mother's proof and, in particular, the stated preference of the minor children fails to satisfy her burden under Gibbons. We find the trial court did not abuse its discretion in denying Mother's motion to modify custody and we affirm the decision of the trial court.

AFFIRMED.

REIF, S.J. (sitting by designation), and FISCHER, P.J., concur.

FOOTNOTES

[1] At hearing Mother admitted that she had kept the boys from Father without him having visitation or knowing where the children were for 8 months.

[2] The trial judge in his remarks, addressed to both of the parties in open court, verified that he had talked to both children; that everything they had said was put on the record; that they expressed a preference to live with mother which he had considered but that the court did not find it in their best interest to change custody of the children from where they are (with the father).

[3] At the end of direct testimony and after the trial judge had ruled that he would talk to the children in camera, Father's attorney made no further objection or request to the court and simply noted: "Judge you've already said you are going to talk to the children so I'm just getting ready to clear out [leave the courtroom]."

[4] It is worth noting that Mother's attorney advanced this proposition of law in his argument to the court concerning the role the child preference should be afforded in a modification of custody case: "[T]he court is not bound by a child preference . . . . But the factors exist that you can hear the preference and you can weight it. If you find it to be against the children's best interest, we can't do anything about that."

[5] The child admitted in his in camera interview that he had "missed some papers . . . and got put on probation" but did not explain why.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2004 OK CIV APP 6, 83 P.3d 911, NELSON v. NELSON
Discussed
 1996 OK CIV APP 134, 931 P.2d 86, 68 OBJ 73, Nazworth v. Nazworth,
Discussed
 2012 OK CIV APP 100, 288 P.3d 948, MULLENDORE v. MULLENDORE
Discussed at Length
 2014 OK CIV APP 9, 317 P.3d 230, LOWRY v. LEWIS
Discussed at Length
 1997 OK CIV APP 69, 948 P.2d 1240, 68 OBJ 3833, Hoedebeck v. Hoedebeck
Discussed
 1998 OK CIV APP 164, 966 P.2d 816, 98 OBJ 4001, Coget v. Coget
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIEL
Discussed
 1960 OK 196, 355 P.2d 572, DAVIS v. DAVIS
Cited
 1968 OK 77, 442 P.2d 482, GIBBONS v. GIBBONS
Discussed
 1969 OK 7, 449 P.2d 267, DUNCAN v. DUNCAN
Discussed
 2008 OK 80, 195 P.3d 896, IN THE MATTER OF BTW
Discussed
 2009 OK 6, 212 P.3d 447, COSSEY v. CHEROKEE NATION ENTERPRISES, LLC
Cited
 2009 OK 66, 218 P.3d 887, ROWE v. ROWE
Cited
 2010 OK 29, 237 P.3d 145, YNCLAN v. WOODWARD
Discussed at Length
 2010 OK 85, 247 P.3d 1162, FOSHEE v. FOSHEE
Discussed at Length
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 113, Preference of Child Considered in Custody or Visitation Actions
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA